M'GOWEN *et al. versus* YOUNG.[a]

1. The action of trover, like the action of assumpsit, is competent to administer justice between parties, according to the rules of equity.

2. The courts of law, in actions of trover, are authorised to investigate the justice and equity of the particular case, in a similar manner, and on similar principles to those, by which, in such courts, the defence of partial failure of consideration, is sustained.

3. Chancery will not relieve against a judgment at law, in trover, because a recovery was had by the plaintiff, of a larger estate, than, as was alleged, he was entitled to, the defendant having omitted to establish, in the suit at law, the particular nature of the plaintiff's interest, by competent proof.

4. So, where a plaintiff, having a life-estate in slaves, brought trover, to recover their possession, and the action was defended by the remainder man, who offered no proof of his residuary interest; the latter held, unentitled to relief in Chancery, on the allegation, that the jury, not taking the particular estate of the plaintiff into consideration, gave the value of the absolute property, as damages, in the suit at law.

In error from Tuskaloosa Circuit court.

This was an action in chancery, commenced by Thomas Hill, complainant, against Ezekiel W. Young

---

[a] The Reporter has found great difficulty in reporting this case, from the fact, that the opinion decisive of it, was made in a different case, (affirmed on a division of the court) the facts and circumstances of which, were essentially variant, from those of the present one.

It will be perceived, that the court, by its opinion in this cause, merely refers to that of Bates et al. *vs.* Murphy et al, with the annunciation that the same principles are decisive of both. The Reporter finds, by reference to the last named case, that many points are considered in it, which do not legitimately come in issue in the case of M'Gowen vs. Young. He has, therefore, only selected from the case of Bates et al. vs. Murphy et al., such principles as appeared properly to have been considered in the case of M'Gowen vs. Young; but in order to explain, as far as possible, the two cases, the opinions in the former case are given at length. The principles of law, in Bates et al. vs. Murphy et al., not essential, therefore,

and others; and revived and continued by his repre-
sentative, Mary Ann McGowen, late Mary Ann Hill.

The original object of the bill, was to obtain an in-
junction against the removal of certain slaves, alleged
to have been in the possession of Ezekiel W. Young;

to determine M'Gowen vs. Young, having been recognised by
a single member of the court, on a division, the Reporter did
not feel authorised to include, in the head notes, to that case :
but as the points decided, are important, they are abstracted
and placed here, for future reference.

1. An answer in Chancery, can only be taken as true, so far
as responsive to the bill, where the complainant replies, and
puts the answer in issue.

2. But when a complainant neither replies nor puts the answer
in issue, by any course, indicating an intention to contest
the facts alleged, then the answer must be taken as true.

3. Trover is an equitable action, and has a full cognizance of
the equity and justice of the case.

4. It is a well established principle, that, in trover, the defen-
dant can defeat the plaintiff's action, by showing an out-
standing paramount title in a stranger.

5. In controversies respecting mortgages, courts of law have
authority to investigate the fact, whether or not the condi-
tion has been complied with, so as to give the mortgagor the
benefit of it.

6. In trover, by mortgagee, the legal measure of his damages,
is the amount of the mortgage debt.   And the law recogni-
zes no distinction in this principle, whether against the
mortgagor or a stranger.

7. Saving to a mortgagee all legal and necessary protection to
his debt, the rule seems to be, that the mortgagor, or any
other person, against whom trover is brought, may limit the
recovery of the plaintiff, to the extent of the mortgage debt
actually due.

8. Semble—That Chancery would be competent to relieve
against an excessive judgment, obtained in trover, by a
mortgagee; but it should appear, that the judgment at law,
was properly defended by the defendant : and he must
have omitted no effort for defence, available to him at law.

and in which the complainant professed to be entitled to a residuary interest. The bill charged, that one Thomas S. Hill, the father of the complainant, had executed a deed of gift of the slaves in question to his daughter Mary Hill, with remainder to the complainant, in default of the said Mary; that the said Mary subsequently intermarried with the said Young, who had received the negroes into his possession. It charged further, that the said Young was deeply involved in debt; and that the residuary interest of the complainant, in the slaves, was in danger of destruction, from the habits of Young, and his efforts to make an absolute disposition of them. It prayed relief by the interposition of chancery, to prevent Young from disposing of the property; and for the protection of the remainder of complainant. The complainant Hill having died, the suit was revived in the name of the representative; and a supplimental bill filed, in which were made parties, the heirs of Hill.

The supplemental bill, disclosed the additional facts, that the slaves having gone voluntarily into the possession of the complainants, the defendant Young had instituted an action of trover, and had therein recovered the slaves—which judgment was sought to be enjoined.

The answer of Young controverted most of the allegations of the bill, and on a final hearing, the injunction was dissolved, and a decree rendered to the following effect.

" This case comes before court, on a motion to dissolve the injunction to the judgment at law; and to dismiss the bill for want of equity."

"It appears that Thomas Hill, by deed, gave cer-

tain slaves to his daughter Mary, (the present wife of the defendant) with a limitation, that if said Mary should die without lawful issue, then he gave said slaves to his son Thomas Hill, and his heirs. The question has been raised, whether the limitation over to Thomas Hill, and his heirs, be good, or whether Mary Hill did not take an absolute estate."

"The adjudication of the Supreme Court, in the case of *Bell & Wife* vs. *Hogan*, is decisive of this question. In that case, the language of the bequest was, in substance, " I lend to my daughter Elizabeth (certain negroes) during her natural life, and if she should have no heirs, then to my four children."— The court held this to be a good limitation over, on the ground, that it was manifest by the words "leaving heirs," the testator intended issue living at the time of her death."

"In the case before me, the language of the donor is much stronger, and more definite. I am satisfied that the limitation over is a good one."

"A much greater difficulty to be encountered, is, does the case present itself, in such an attitude as to warrant the relief prayed for? It seems there has been a trial at law; a verdict and judgment in favor of Young; and that judgment affirmed by the Supreme Court on a writ of error. The Supreme Court, in giving their opinion, uses the following language: "'That in the action of trover, on the issue joined, the jury could fairly take into consideration, by way of reducing the amount of damages, the value of the complainant's residuary interest in the property in contest : and evidence, of a legal character, should have been admitted, to show what was the probable value of that interest; but that neither the bill, the

supplemental bill, or the several orders, taken by the chancellor, could have proved that the complainants had any interest. The only ground of equity, as the case is now presented, is, that in the action at law, the jury gave to Young, in damages, the value of the absolute property, instead of the value of a life-estate, only. The Supreme Court have decided, that Young had a right to recover at law the value of his life-estate in the slaves. If then, he had this right, on what ground can equity interfere, and deprive him of the enjoyment of his judgment? Why did not the complainants prove on the trial, at law, the value of their residuary interest? If they have neglected or omitted to do so, this negligence or omission, is no ground for equitable interposition. Merely because the jury may have given more damages than were strictly proper, can this be a ground on which to enjoin a judgment which has, on solemn argument, been affirmed by the Supreme Court? I think the bill shews no sufficient excuse for the omission to prove, on the trial, the value of the residuary interest in the slaves. The judgment may possibly be wrong, and oppressive, but I can see no sufficient ground to afford relief against it : there must be some end to litigation. It is, therefore, ordered and decreed, that the injunction be dissolved, and the bill dismissed with costs."

" CRENSHAW, Judge."

It was assigned for error, in this Court, that the chancellor erred in his decree, and the same was sought to be reversed.

*Stewart,* for plaintiff—*Shortridge, contra.*

SAFFOLD, J.—In this case all the members of the court are competent to adjudicate.

In the case of *Bates, et al.* vs. *Murphey, et al.*[a] the CHIEF JUSTICE was not, having presided below. Though the circumstances of the two cases are essentially different, in many respects, they involve the same principles of law, and chancery practice.

In this case, the Chief Justice concurring with me in the application of the doctrine, as stated in my opinion just delivered in the other; and the principles therein contained, being fully decisive of all the material questions involved in this case, we deem it sufficient merely to declare an affirmance of the decree of the Circuit Court, and to refer to the former opinion for the legal principles, and reasons, by which we arrive at the conclusion.

The decree in this case is accordingly affirmed.

[Here follow, the opinions referred to in the preceding note by the Reporter.]

### BATES et al. *versus* MURPHY et al.

SAFFOLD, J.—The plaintiffs in error, being complainants below, filed their bill for an injunction, and relief, against a judgment at law, obtained by the defendants in error, against Bates, one of the complainants.

Of the facts of the case, according to the view I have taken of it, it is sufficient to state, that, Cade in 1822, procured from F. G. Gaines, (his son-in-law,) a

---

[a] See next page.

mortgage upon several negroes, the object of which was to secure the payment of four thousand dollars, lent and advanced to the latter. Cade neglected and failed to take possession of the negroes, after forfeiture of the mortgage, according to the terms thereof, until the mortgagor was otherwise dispossessed, as hereinafter explained. In 1823, Murphy & H. P. Gaines, procured, from the same mortgagor, a mortgage upon three of the same negroes, included in the prior mortgage; also, a stock of cattle and a small tract of land; the object of which was, to secure said Murphy & H. P. Gaines, against a debt of one thousand dollars, which they had paid, or become responsible for, to the Tombeckbee bank, as the securities of said mortgagor. At, or near the same time, the negroes in question were seized by Bates as sheriff, in obedience to an order in chancery, in the issuance of which, said Murphy, as agent for another, had an agency. The process under which the negroes had been taken into possession, or that which the levy was intended to satisfy, having been quashed, while the negroes remained in the possession of Bates, he agreed with Cade to put them into his possession, and did so, on the latter giving to him a bond of indemnity against the consequence of the same.

After which, Murphy & Gaines instituted an action of trover against Bates, for the negroes, (three in number,) which had been mortgaged to them, and also, (with several others,) to Cade, as aforesaid. On the first trial, Bates prevailed: a new trial having been granted; on the second, Murphy & Gaines recovered a verdict against the former, for fourteen hundred dollars, besides costs; their lien being allowed the preference. It is also shewn, that Murphy &

Gaines have realized, from the cattle and land embraced by the mortgage, about three hundred and sixteen dollars; which sums, it is charged, exceed the amount of the debt for which they were bound, as securities, for F. T. Gaines; that Cade will be compelled to refund Bates, for whatever sum he may be held responsible, under the judgment against him. The two latter, therefore, join in the bill; and on the ground, that a portion of the excess of the sums realized by Murphy & Gaines, arose out of the action of trover, for the three negroes, making their *value* the measure of the damages, and on which negroes, Cade, holding a *bona fide* lien, is entitled to the equity of redemption, they prayed the benefit thereof; or, in other words, the excess of the sums thus received, by Murphy & H. P. Gaines. The defendants assume the position, by their answer and argument, that though they have recovered about the amount charged for their indemnity, as securities of F. T. Gaines, yet that they have necessarily incurred costs, in the prosecution and defence of various suits, which were consequences of their said security-ship and mortgage, to the amount of four hundred and ninety dollars; also, that the judgment in trover, having been founded upon their title to the negroes, under their mortgage, the legal presumption, as well as the truth of the fact, is, that they recovered the amount only to which they were legally and equitably entitled.

A preliminary question, discussed with the main one, in this case, was, whether the answer of the defendants ought to have been taken as true, on the hearing in the Circuit court?

It appears that, after answering, the defendants

moved a dissolution of the injunction; upon which, the complainants immediately moved a hearing on the bill and answer: the latter motion had precedence, in the opinion of the chancellor, who proceeded to the hearing, and decreed a dismissal of the bill, on the two-fold ground, that the respondents were not more than indemnified: and that in trover, the plaintiffs, as mortgagees, were entitled to recover only the amount legally and justly due them.

With reference to the preliminary question, it is conceded that, according to the general rule of chancery practice, in England and the states of the union, when a suit is set for hearing on bill and answer alone, the answer is to be taken as true; but when the complainant replies, and puts the answer in issue, it is not to be received as true, except so far as it is responsive to the allegation of the bill: farther, the facts must be sustained by proof.[a]

It is contended that, as our statute dispenses with the necessity of replications, the omission of them is a matter of entire indifference, and the trial must proceed, as though the complainant had replied. The force of this proposition is admitted, so far as re gards a replication merely; but when no such statute exists, the formal mode of practice is, for the complainant, when he would contest the facts of the answer to reply, and having his cause set for hearing, on bill, answer and proof, or exhibits and proof, as the case may be; which latter step, no less than the former, indicates the intention of controverting the facts in the answer. The statute has prescribed no rule, respecting the necessity of setting causes for hearing: nor would I conceive it important, that formality should be observed in doing so, as no other ob-

ject can be effected by it, than that of giving notice to the respondent, when a trial will be insisted on: and, whether or not, the answer is to be contested. If the truth of the answer be admitted, or, if the purpose of contesting the facts, be otherwise sufficiently indicated, I deem any order setting the cause for hearing, immaterial. But in as much, as the rule of Chancery, has been long established, of taking the answer as true, under an order setting the cause for hearing on bill and answer, and as the respondent must always be subject to surprise, if he is entitled to no notice of the intention to contest the truth of his answer, until the hearing has been entered on, my opinion is, as it was in the case of *Lucas* vs. *The Darien Bank*,[*] that the answer must be taken as true, unless it be put in issue, in one of the modes alluded to; or some other, expressly indicating an intention to contest the facts; and that this can well be done, according to the usual practice, by requiring proof in the order, setting the cause for hearing.

[*]2 Stew'rt 280.

Then, in as much as this hearing was had, on bill and answer alone, and this on the motion of the complainant, without any kind of notice to the adversary, of any design to controvert the answer, the same must be taken as true.

Viewing the answer as true, there can be but little difficulty in arriving at the conclusion, that the decree of the chancellor was correct. But, if the case be viewed in a different light, and the *bill* be taken, or proved to be true, in all its allegations, they present questions on which we have felt great difficulty. They involve considerations, respecting the legal and equitable effect of a recovery in trover, for the mortgaged property, by the mortgagee against

the morsgagor, or his assignee, in which latter capacity, I think, the present complainants are to be regarded.

Numerous cases, fully sustain the doctrine, that a mortgagee of *real estate*, after forfeiture, when the mortgage has become absolute, may sustain an ejectment, for the recovery of the premises; and. that he may do this, as well against the mortgagor, as any other person in possession, when the right of the mortgagee accrues, or afterwards, when he chooses to assert it. The right to recover personal property, under like circumstances, by suit at law, may be subject to greater qualifications, according to the circumstances of the case.

A material distinction exists, between the effect and consequences of a recovery in ejectment, and one in trover. The effect of the former, is merely to determine the right of possession. It is true, this right may, and most frequently does depend on the superior right of property, and a decision of which, is the main object of the suit; but, it is equally true, that one recovery does not bar a second suit, against either party, who may be unsuccessful in the first—that, by the fiction of ejectment, the same litigation may be revived, from time to time, until enjoined by Chancery.

Not so in trover.—This is an action for the recovery of *damages*, for the wrongful *conversion* of *personal* property. As a general rule, the measure of damages, in trover, is the value of the property, when converted, with interest thereon, by way of damages, till the trial;[a] but to this, there are many exceptions. If the conversion was temporary; if the plaintiff was but part owner; or, if he, notwithstanding the con-

[a] 14 John. Rep. 123.

version, derived partial benefit therefrom, such benefit will go in mitigation of the damages—*Wright* vs. *Spencer*[a]

The action of trover, therefore, appears competent, in many respects, to investigate and determine the equity of the case. To allow a mortgagee the right of the action of trover, against the mortgagor, or any holding under him, with the right to recover the full value of the property, regardless of the amount of the debt, would be to sustain a doctrine, involving the apparently absurd consequences; that, notwithstanding, the mortgage was intended alone to secure the debt; and, that the mortgagee found it necessary to sue, in order to effect the intent of the mortgage; that, yet the mortgagee must necessarily recover the full value of the property, and damages for the conversion; and the mortgagor must be driven to the necessity of seeking relief, against the excess, by suit in Chancery. That such is, (according to the principles of the common law) the nature of the action of debt, does not prove it to be so in the action of trover; because the latter is not of the rigid, unweildy character of the former action, but is competent, like the action of assumpsit, to administer justice between the parties, according to the rules of equity, without a subsequent resort to Chancery.— In trover, I hold the court competent to investigate the justice and equity of the case, in a similar manner, and on similar principles, to those by which courts of law will sustain the defence of partial failure of consideration, when an action may be brought at law, to recover the purchase money.—*M'Million* vs. *Pigg & Marr*[b]—*Peden* vs. *Moore.*[c]

In order to ascertain the true nature of the title of

[a] 1 Stew'rt 576.

[b] 3 Stew'rt 135.

[c] 1 Stewart & Porter 71

a mortgagee, it may be material to refer to the principles of a few American decisions of recent date.

It is held, that the mortgagor, notwithstanding the mortgage, is deemed seized, and is the legal owner of the land, as to all persons, except the mortgagee and his representatives.—*Hitchcock* vs. *Harrington*[a]—*Runyan* vs. *Mersereau.*[b] Also, that a mortgage, at law, as well as in equity, is regarded as a mere security for the money—the mortgagee has only a chattel interest, and the freehold remains in the mortgagor.— *Coles* vs. *Coles.*[c]

Lands mortgaged, cannot be sold on execution against the mortgagee, before a foreclosure of the equity of redemption, though the debt is due, and the estate of the mortgagee has become absolute at law.—*Jackson, ex dem. Norton* vs. *Williard*[d]—*Runyan* vs. *Mersereau.*[e]

In the first case here cited, *Kent*, Chief Justice, in delivering the opinion of the Court, after presenting the doctrine in the form of an interrogation, remarks, that "this appears to be a new question, for we can find nothing like a decision of it in any of the books. Mortgages have been principally the subject of equity jurisdiction. They have been considered in these courts in their true nature and genuine meaning; and the rules by which they are governed, are settled upon clear and consistent principles. The case is far different in a court of law; and we are constantly embarrassed between the force of technical formalities, and the real sense of the contract. The language, however, of the modern cases is tending to the same conclusions which have been adopted in equity; and whenever the nature of the case would possibly admit of it, the courts of law have in-

[a] 6 J. R. 296.
[b] 11 John. Rep. 534.
[c] 15 John. Rep. 319.
[d] 4 John.'s Rep. 41.
[e] 11 John. R. 534.

M'GOWEN, et al. vs. YOUNG.

clined to look upon a mortgage, not as an estate *in fee*,
but merely as a security for a debt." He refers to the
observations of Lord *Hardwick*, in the case of *Rich-*
*ards* vs. *Sims*[a]—that the courts of law had then be- [*1Barn.Ch Rep.90.*]
gan to consider mortgages in that light; and that a
discharge of a debt even by parol, was considered as a
discharge of the mortgage; so that in an ejectment
upon the mortgage, evidence that the debt was satis-
fied, would defeat the estate in the lands; which shews
" that even the law, considers the debt as the prin-
cipal, and the land as an incident only." He further
remarks, " the real nature of a mortgage, in the equi-
ty sense of it, has been repeatedly recognised in the
courts of law, since the time of Lord *Hardwick*; and
it has been said and repeated, that it was an affront
to common sense to say that a mortgagor in possession
was not the real owner; that the mortgagee, notwith-
standing the form, has but a chattel interest, and the
mortgage is only a security."[b] He concludes his re- [b*2Burr969; Doug. 630;*]
view of the doctrine, by saying, the interest of the [*Ib 455;1H*]
mortgagee in that case was not the subject of a sale [*Black,117, note;Doug*]
on execution : that " at the time of the sale, the mort- [*114;1East. 289.*]
gaged premises continued to be the real estate in the
hands of the mortgagor, and liable to be sold on exe-
cution against him, until foreclosure ; or at least, that
until possession taken, the mortgage remains in the
light of a *chose in action*." Farther, he says, " there
is no way to render a mortgage, vendible, but by al-
lowing the debt to go with it ; and this would be re-
pugnant to all rule, for it is well understood, that a
chose in action, is not the subject of sale, on execu-
tion. When the mortgagee has taken possession of
the lands, the rents and profits may, perhaps, then,
become the subject of computation and sale."

The principle also prevails in New York, that when the mortgage is paid off and satisfied, no release is necessary to reconvey the title to the mortgagor.—*Jackson, ex dem, Randall* vs. *Davis;*[a] and that a legal tender of the debt, which is refused, will discharge the land from the mortgage, though the debt remains.—*Jackson ex dem. Bowers* vs. *Crafts.*[b]

If this be the correct doctrine, relative to mortgages of real estate, it must be admitted, that mortgages on personal property, so far as they differ from similar liens on real estate, are a still less permanent and substantial interest. As a farther illustration of the equitable nature of the action of trover, it may be noticed, that, in this action, the plaintiff is entitled to recover damages for the use, as well as the deterioration of the goods.—*Shotwell* vs. *Wendover.*[c] That in the revision of a judgment, rendered in an action of trover, the Supreme court of New York, decided, that as the point made, relative to the partnership, was an appeal to their equity, they could not but take notice of the rule in Chancery, "that partnership property, taken in execution, for a separate debt, cannot be held against joint creditors; and that the share of such partner, for his separate debt is to be applied, *only after the partnership accounts are taken and settled.*"—*Wilson and Gibbs* vs. *Conine.*[d]

It is also a well established principle of law, that, in trover, a defendant may prove an outstanding, or paramount title, in a third person, and defeat the plaintiff's action.—*Schermerhorn* vs. *Van Volkenburgh*[e]—*Kennedy* vs. *Strong.*[f]—*Rotan* vs. *Fletcher.*[g]

The doctrine, as to the effect of the satisfaction of a mortgage, when there is no objection as to the time of payment, is the same, in Virginia, as stated in re-

[a] 18 John. 7

[b] 18 John. Rep. 110.

[c] 1 John. 65.

[d] 2 John. 230

[e] 11 John. R. 529.

[f] 14 John. R. 128.

[g] 15 John. R. 207.

spect to New York.   But, in the case of *Falkner's Adm'r* vs. *Brockenbrough,*' it was held, that when the mortgage stipulated, that the money should be paid on or before a given day, and it was paid after that day, the mortgagee was not deprived of his right of action at law, on the mortgage: nor did the acceptance of the money, by the mortgagee, after the day, impair his right at law.

The distinction between the rules of law, and the powers of Chancery, in respect to mortgages, appears to be more inflexibly maintained in Virginia, than in New York, or many of the other States.   The more relaxed rule, and one that will enable courts of law to deny the right of recovery, in ejectment or trover, on a mortgage, after full satisfaction of the debt, which it was intended to secure (though the payment may have been made after the day, if accepted by the mortgagee,) would, I conceive, be more conducive to justice, and better comport with the more correct analogies of modern jurisprudence.   But, in this case, it is unimportant to adopt any rule for our government on that point, it being unnecessary to the decision of this case.

The rules of practice, in Virginia, as well as in New York, and several other States, recognise the power of courts of law, in controversies arising on mortgages, to investigate the fact, whether or not the condition has been duly complied with; and if so, to allow the mortgagor the benefit of it.   To exercise this jurisdiction, the courts of law are unavoidably driven to the necessity of hearing and deciding the mortgage accounts; nor are they presumed to be more complex and difficult, than many other matters of purely common law cognizance.   It is not, as sug-

gested in argument alone, because the accounts are complex, so that courts of law are incompetent to determine them, that the adjustment of mortgages often fall, more appropriately, within the cognizance of Chancery; but, it is, more particularly, because, after a failure of the condition, and when the deed has consequently, by its terms, become absolute, the extraordinary powers of Chancery are necessary to afford relief against the forfeiture, in the same manner that, by common law, it is necessary, to obtain relief against the penalty of a bond, after it has been incurred.

These principles also appear to sustain the position, that in trover, by mortgagee, the plaintiff can only recover the amount of his debt, with interest and cost; for the court being competent to decide whether or not the debt has been duly paid, must, from analogy and reason, be competent to ascertain the amount of the debt, whether it remains as originally contracted, or has been varied in any form or manner whatever. I conclude, therefore, that the amount of the mortgagee's debt, is the legal measure of his damages in trover. The law seems to recognize no distinction, respecting the measure of the plaintiff's recovery, as mortgagee, whether his action be against the mortgagor, or any other person. It is true, as contended for the plaintiffs in error, a stranger, who may have obtained possession of the mortgaged property, and is made defendant in trover, may not be as competent to scrutinize the plaintiff's demand, as the mortgagor: but the presumption is, that the mortgagor himself, or some person drawing title from him, will be the defendant, so as to be entitled to the full benefit of any defence he can frame, or suggest.

If it be otherwise, and the defendant be a stranger, having no interest in the mortgage, his right to defend, and, at least, reduce the recovery against him, to what shall appear to be the plaintiff's existing debt, is, I conceive, a right clearly sustainable, by the general principle of law, already adverted to, *that the defendant*, in an action of trover, has a right to avail himself of an outstanding, or paramount title in a third person; in other words, he can have the same benefit of the mortgagor's title, that he, himself could, as defendant, and can reduce the plaintiff's recovery to the true amount of his debt against the mortgagor.

The true nature and consequences of a mortgage, as already stated, the positions that the mortgagor is deemed seized of, and is the legal owner of the mortgaged property, as to all persons, except the mortgagee, and his representatives; that the mortgage is but a mere security for the debt, and constitutes only a chattel interest, leaving the freehold (in case of land) in the mortgagor, dictates the rule, to which I incline; that, except with reference to the mortgagee, after failure of the condition, and then, to the extent merely of his debt, the mortgagor is the general legal owner of the mortgaged property, as though never conveyed; and, that, saving to the mortgagee, all legal and necessary protection to his debt, the mortgagor, or any other person against whom trover may be brought, may limit the recovery to that amount. And such appear to be the consequences of various decisions of this court.— *Wright* vs. *Spencer*[a]—*M'Gowen & Wife* vs. *Young & Wife.*[b]

[a] 1 Stew't 573.
[b] 2 *Id.* 276.

Then, viewing the plaintiffs in error, according to the supposed legal effect of their situation; that they held the property as secondary mortgagees, and as

defendants, in trover, are to be viewed as holding the property, under that claim; that recovery was had against them, by virtue of the mortgage, in favor of Murphy & Gaines, for a sum exceeding the amount of the mortgage debt, in favor of the latter; that the value of the mortgaged property was recognised as the legal measure of the damages, by the court and jury—the question arises, is Chancery competent to relieve against the excess of the judgment?

The case of *Boyce's Ex'rs* vs. *Grundy*, which was a bill for an injunction and relief against notes sued on at law, and which were impeached for fraud in the consideration, which was the sale of land, the language of *Johnson*, J., in delivering the opinion of the court, is latitudinous, respecting the jurisdiction of Chancery. He says: "To oust Chancery, it is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and as efficient, to the ends of justice, and its prompt administration, as the remedy in equity." The facts of the case, in which this language was used, appear sufficiently to shew the application of the doctrine, from the subsequent remarks of the court in the same case—that in the case before them, at law, "although the defence of fraud might have been resorted to, and ought to have been sustained, in that particular suit, "and," says the Judge, "I will add, would have greatly aided the complainant, in a bill to rescind; yet, it was obviously not an adequate remedy, because it was a partial one. The complainant would still have been left to renew the contest, upon a series of suits, and that, probably after the death of the witnesses." There, a contract for the sale of lands, in which many notes had been given, and some of which were to continue

to fall due for a series of years, then to come, was adjudged fraudulent and void; and was considered void, even in a court of law; yet the complainant, who was defendant, at law, having failed in his defence there, was allowed relief in Chancery, because the defence at law, was more difficult, and less adequate, than in Chancery; and because the defence at law, must have been renewed in a series of suits, and may have been disappointed and lost, by the death of the witnesses, before all the suits at law, could or would have been brought.

The Supreme court of New York—*King* vs. *Baldwin*—recognises the general rule of Chancery practice, "that when a court of equity once had jurisdiction, it will insist on retaining it, though the original ground of jurisdiction, the inability of the party to recover at law, no longer exists." Again, that court says, in the same case—"If it be doubtful whether a court of law can take cognizance of the defence, and there exists no doubt of the jurisdiction of a court of equity; and if, in such a case, a defendant at law, under the influence of such doubt, omits to make his defence, or, if he brings it forward, and it be overruled, under the idea that it is not a defence at law, it is not granting a new trial, for a court of equity to afford relief, notwithstanding the trial at law."—*Rathbone* vs. *Waren.*[b]

In the case of *Livingston* vs. *Livingston,*[c] in which the complainant sought a discovery of the title of the defendant to certain lands, and the recovery of rent, the chancellor ruled that, if the defendant intended to have objected to the jurisdiction of the court, he should have demurred to so much of the bill, as prayed relief; that, as a general rule, he

•17 John. Rep. 384.

b10 John. 587.
•4 John.'s Ch. R. 287

comes too late with his objection at the hearing, after he has, by his answer, put himself upon the merits.[a] Farther he says, "rent is recoverable in equity, when the remedy has become difficult, or doubtful at law, or when the premises are uncertain"—*Underhill* vs. *Van Cortlandt.*[b]

Respecting the power of chancery, to afford relief, after a trial at law, the principles advanced must be understood to apply only to cases, in which chandery has, of right, at least, concurrent jurisdiction with the court of law, and is more competent to afford relief. In relation to the necessity of a demurrer, as the means of denying the right of relief, the doctrine of this court, as declared in many cases, is, that if the right claimed, or relief sought, be of a a nature, which does not fall within the cognizance of chancery, the omission of the defendant to demur, does not extend the equitable jurisdiction of the court, or authorise relief of a kind, or nature, which the court would otherwise be incompetent to grant.

The Supreme Court of Virginia—*Turpin* vs. *Thomas*[d]— holds the principle, that a court of equity cannot relieve against a judgment at law, merely on the ground, that it is *erroneous;* even though the plaintiff at law was not entitled to recover in that form of action, and the judgment was obtained by default: and that, to entitle the defendant at law, to relief in equity, in such cases, there must be some suggestion of *fraud*, or *surprise*, or some good reason assigned for the failure to make the defence at law. In sustaining these principles, *Judge Roane* remarked, that, "considering the natural and progressive tendency of the jurisdiction of chancery, to encroach upon

that of the common law courts, and thus, not only to loose the advantages of a jury trial, and *viva voce* examination, but also to give a man the benefit of his *own* testimony—that jurisdiction, however salutary and valuable, should not be extended to the overthrow of the jurisdiction of the courts of common law: nor ought the land-marks established by this court, (chancery,) in relation to this subject, lightly to be departed from." In the case of *The Auditor* vs. *Nicholas*, it is declared, if a defendant fail to make a defence at law, to the benefit of which he is fully entitled, he cannot, without a competent excuse, obtain relief in equity on the same ground. [2 Mun. 31.]

It is a doctrine of general recognition, in England and the United States, that chancery will not relieve against a judgment at law, on the ground of its being against equity, unless the defendant was ignorant of the fact in question, or it could not be received as a defence at law; or, unless he was prevented by fraud, accident, or the act of the opposite party, from making defence—*Foster* vs *Wood*—*Duncan* vs. *Lyon.* [6 Johns. Ch. R. 87. 3 Id 351.]

From all the circumstances of the case, if the allegations of the complainants' bill were assumed as true, their right to relief in chancery is, at least, questionable: did it appear, that they declined urging, as a defence at law, the fact, that the plaintiffs in the suit of trover, derived title to the property, under a mortgage, which was only a security for a debt of less amount than the value of the property; that such a difference, between the value of the property and the amount of the debt, did truly exist; that they so declined, from doubt whether the matter was available in mitigation of the damages at law, or from a belief that it was not; or, did it appear, that

the complainants, as defendants at law, offered to make this defence, but that the court, under the idea that it was not a defence at law, overruled it; then, inasmuch as mortgages, and the benefit of the equity of redemption, are subjects of proper equity cognizance; and as chancery may be more competent to investigate and adjust the state of accounts between the mortgagor and mortgagee; I would incline to the opinion, that relief in chancery could be had by the defendants in the action at law, even after judgment rendered against them.

In this case, however, as the answer of the defendants must be taken as true, and viewing the case in that light, they have recovered no more than they are equitably entitled to; and, because it does not appear that the court, on the trial of the action in trover, did not maintain the same legal doctrine as here advanced; nor that the amount of the plaintiffs' debt, including such expenses as could be legally *tacked*, was not regarded as the true measure of the recovery, I am of opinion, no relief can be had in chancery, and that the decree of the Circuit court must be affirmed.

The *Chief Justice* having presided in the trial below, and the two remaining Judges being divided on this case, an affirmance is the consequence, and contrary to our usual practice, in cases of division, the opinions are delivered on account of their influence on the case of *M' Gowen, et al.* vs. *Young, et al.*

TAYLOR, J.—The first question which presents itself in this case is, by what rule are we to presume the jury was governed, as to the amount of damages rendered by their verdict in the suit of law, in the case of

*Murphy & Gaines* vs. *Bates?* If, by law, they were authorised to take into consideration any thing else, but the value of the mortgaged property, to recover damages for the detention of which, their action was instituted, it must have been the amount actually due from Francis T. Gaines, the mortgagor, to Murphy & Gaines, the mortgagees. If this was the measure of damages legally to be meted by the jury, in that action, we are bound to presume, that the recovery was according to law, and the decree dismissing the bill must be affirmed. The decree expressly takes this ground, that the mortgagees must have recovered the amount due to them from the mortgagor.

It may assist us in arriving at a correct conclusion on this subject, briefly to examine, what interest, or property, the mortgagee has in the thing mortgaged, at common law; and when we have ascertained this, we shall know what his legal interest is, for we have no statute altering the common law on this subject. In *Powell*, on mortgages, page 3, we are informed, that "the striking distinction between a mortgage of lands, or goods, and a pawn of goods, is, that in the former case, the mortgagee has, after the condition forfeited, an *absolute interest* in the thing mortgaged, whereas the pawnee has but a special property in the goods, to detain them for his security. A mortgage is a pledge, and more ; for it is an absolute pledge, to become an absolute interest, if not redeemed at a certain time." Of the *vadium mortuum*, of which I am now speaking, *Littleton* says, "if he did not pay it, (that is, if the mortgagor did not pay the money secured by the mortgage, by the time agreed upon,) then, the land, which was but in pledge upon condition for the repayment of the money, was not to be

restored to the owner, and, therefore, was considered as dead to him." *Powell*, also says, (page 9, &c.,) "these sorts of conveyances, by way of mortgage in fee, were, at first, found to be attended with great inconveniences; as, if the money was not paid at the day, so that the condition was forfeited, and the estate became absolute, the estate was, thenceforth, subject, at common law, to the dower of the wife of the feoffee, and to all his other real charges and incumbrances. But courts of equity, after their jurisdiction became firmly established, put mortgages in fee upon the right footing; maintaining the power of redemption, as an equitable right, inherent in the land, and binding on all persons whomsoever."

Judge *Kent*, in the 4th vol. of his commentaries, (page 129, &c.) says, " a mortgage is the conveyance of an estate, by way of pledge, for the security of debt, and to become void on payment of it. The legal ownership is vested in the creditor; but in equity, the mortgagor remains the actual owner, until he is debarred by his own default, or by judicial decree." In page 132, he says, "a mortgage of goods differs from a pledge, or pawn, in that the former is a conveyance of the title upon condition, and it becomes an absolute interest at law, if not redeemed in a given time." The same author, (page 134,) uses the following language, speaking of the mortgage of a freehold estate : " The legal estate vested immediately in the feoffee, and a mere right of re-entry, upon performance of the condition, by payment of the debt strictly at the day, remained with the mortgagor, and his heirs, and which right of entry was neither alienable, nor devisable. If the mortgagor was in default, the condition was forfeited, and the estate be-

came absolute in the mortgagee, without the right, or the hope of redemption."

It is useless to recur to other authorities; they might be cited without number, to prove the same, that after failure to pay, by the mortgagor, at the time prescribed, the mortgagee has the absolute legal title. It is true, many of the old restrictions upon the mortgagor, no longer exist; he may alien his right to redeem by deed or will, but this right of redeeming, or in any other way enforcing the interest of the mortgagor at common law, can, in no way, be exercised; it is purely an equitable interest, and in Chancery, alone, can it be pursued. If these positions be correct, it results, that if personal estate be the subject of the mortgage, and the mortgagee institutes an action of trover, to recover damages for the converson of it, the measure of damages must be its value with interest. He sues for his whole legal right; that right is the entire legal estate, at law—therefore, this must be the amount of his recovery. If the suit be against the mortgagor, he cannot set up his interest, it is altogether equitable; the accounts between the parties may be of long standing and complicated, for these reasons, Chancery is the most adequate forum—but, above all, in law he has no interest. But, in many cases, it would require a total departure from all the rules which govern actions at law, to take into view the state of the accounts between the parties. It is a bad legal rule, which has no reciprocity in it. If, then, when sued in trover for the property, the mortgor can reduce the damages below the value of the property, by shewing partial payments, the receipt of profits by the mortgagee, &c., the mortgagee may show charges, expenses, &c., which would swell his

demand greatly beyond the value of the property—and thus an action of trover would be changed into one of account, requiring all the references, &c., which were common to that antiquated action. I have thus far viewed the case, as if the suit had been brought against the mortgagee; but it was against a stranger, who cannot be supposed acquainted with the state of the accounts between the parties. If the mortgagee can swell his demand beyond the value of the negroes, by proving charges, &c., the defendant may introduce the claims of the mortgagor, for payments, &c., so far as he can prove them; but, were he to do so, what effect would it have upon the interest of the mortgagor? He would not be at all bound, by this investigation, but might still file his bill against the mortgagee, and investigate all these matters over again. Nor can I perceive, in what way any thing like certainty could be arrived at, were the rule insisted on by the counsel for the defendants in error, to be adopted. It would lead to the greatest uncertainty. Parties to an action would not only involve the subjects of litigation between themselves in the result, but the accounts between one of them and a stranger, must also be determined.

Nor do I find any authority, which, to my mind, at all sanctions such a course. The general doctrine which has been referred to, which limits the recovery in trover, to the amount of injury sustained by the plaintiff, cannot bear upon the case, because that injury must be ascertained by legal rules.

If one man lend a horse to another, to be used in a particular manner, and he uses him differently, to the injury of the owner, and afterwards returns him; this action may be sustained, and the measure of da-

mages will be, not the value of the horse, but the amount to which he is impaired.—Why? Because the owner has a legal right to nothing more. The horse is still his own; no right in him is claimed by the defendant, nor does the verdict, in any manner alter the right of property. So, in the case of *Wright* vs. *Spencer*, decided by this court, the property of the plaintiff had been irregularly sold by the officer who had levied upon it; but the sum produced by the sale had been applied to the payment of the execution.— The court determined, that the officer was only liable for the difference between the amount for which the property sold, and its actual value. This case is, in every respect, similar to one of bailment. As, in the case of injury, resulting from the negligence of a hirer, who returns the property hired, only the amount of the injury can be recovered, because the property is restored to the possession of the plaintiff; so, in the case of *Wright* vs. *Spencer*, the property is considered as restored, because, the amount produced by the sale was applied to the plaintiff's benefit, and the officer is liable for the deterioration in price, produced by his negligence or misfeasance.

It is insisted, however, that the decree should be affirmed, because the facts set forth in the answer, show that the defendants are entitled to the full satisfaction of the judgment at law; and, as the case was tried and determined upon bill and answer only, the answer must be taken as true, whether responsive to the bill, or not.

This certainly is a correct position, unless the law is altered by our statute of 1823, entitled, "an act to regulate proceedings in Chancery suits," the fifth section of which is as follows: "It shall not be requir-

ed to file a replication to an answer; and, in all cases where the answer is filed ten days before the sitting of the court, or the bill is taken *pro confesso* for want of an answer, the cause shall be heard and determined at that term, if practicable," &c.

This language is too plain to require explanation ; neither the defendant nor the court can require a replication, in any case. But, it is contended, that the complainant must shew, in some way, that he requires the defendant to support his answer by proof; either by obtaining an order for taking testimony, or having the case set for hearing on bill, answer and proof, or by some other order. But, could this have been the intention of the legislature, when enacting the section just read? Almost the only effect of a replication, before the statute—indeed, the only important one—was to give the notice to the defendant.— The inference, then is, that it was intended to require of the defendant, the same mode of proceeding thereafter, without a replication, which had been previously done, with one. If not, why make any alteration at all? The replication is as simple as any order which could be made. The only construction which I feel authorised to give to the act, is the one dictated by its plain terms. The legislature believed, that, in all cases, the defendant should prove the allegations of the answer, which were not responsive to the bill, and we have only to carry the intention expressed in the law, into effect.

But, it is also objected, by the defendants, that no decree could have been made, in favor of the complainants, without evidence, sustaining the allegations of the bill. One fact, it certainly was necessary for the complainants to prove, if not admitted by the an-

swer—the execution of the deed of trust to Cade.— But this is repeatedly admitted: therefore, it would have been a work of supererogation, to produce evidence of it. It certainly could not be required, in this suit, that the consideration for the deed of trust should be proved. What is it to the defendants, whether there was any consideration, or not? No part of their mortgage debt is jeopardised by the deed.— every thing which their mortgage gave them a lien for, against the mortgagor, it equally secures to them against Cade. The complainants ask the excess, after satisfying the debt of the defendants; the mortgagor himself had a right to do this. Even if Cade's mortgage be fraudulent, it is good against F. T. Gaines. But we have no right to presume it to be any thing but fair and honest. "Fraud cannot be presumed," is a maxim of the law; and every instrument must be considered as having been executed for honest purposes, until the legal rights of another requires the holder to prove the fact. Here, if the complainants asked that their mortgage should be preferred to that of the defendants, it would devolve upon them the burden of proving the honesty of the transaction in which, they allege, their mortgage originated.— But they yield the preference to the defendants, and only ask the benefit of the remainder of the mortgaged property, after the debt of the defendants is satisfied. So far as this is involved, the defendants cannot call upon them, to show the consideration of Cade's lien.

As respects the charges, which the defendants contend should be paid to them, out of the mortgage fund, it is evident that, for some of them, the mortgagor could never be made liable, and, that none of

them are sustained in that way, which would authorise the court to allow them. I would be willing to decree in favor of the defendants, for the costs of the suit of the bank, against them as *Indorsers*, upon proof that they had paid them; and for the amount of a reasonable attorney's fee, in the suit at law, against Bates, because the complainants should have delivered up the property to them, without suit : but they cannot be entitled to have the costs of the new trial, which was granted on their own application, in the suit at law, or the fee to counsel in this case, refunded to them. The sum of three hundred dollars, charged for lawyers' fees, in the action of trover, is most exorbitant. The proper way would be to refer it to a master, to ascertain, what would be a reasonable fee in the suit at law, and how much costs had been recovered of, and paid by the defendants, in the suit of the bank against them.

My opinion is, that the decree should be reversed.