## HAMER vs. HARRELL.

1. A. having borrowed money of B, on an agreement to place in B's possession, a slave, whose services were to discharge the interest, until a certain amount was paid; afterwards on payment of the stipulated amount, got the possession of the slave: held, in trover, to regain possession by B, that proof of the value of the services of the slave, by way of disclosing, that the whole amount loaned, had been discharged; was incompetent.

2. *Semble*—that where money is loaned; and a slave is taken as security for its re-payment, on a contract that the use of a slave, shall go in discharge of the interest—if the value of the services of the slave, greatly exceeds the legal rate of interest, the contract is usurious and void.

This was trover in Tuskaloosa Circuit Court, by Harrell against Hamer, to recover possession of a slave.

The facts of the case, were, that Hamer having borrowed three hundred dollars of Harrell, gave the

latter the possession of the slave in question, on a contract, that the value of the hire of the slave, should discharge the interest, until one hundred and eighty-four dollars of the loan, should be discharged. Hamer having paid this amount, procured possession of the slave; and defended the action by an attempt to show, that the value of the services of the slave, after the payment of this sum, was sufficient to discharge the entire debt. The court below rejected proof to this effect, as irrelevant, to which Hamer excepted.

The record did not present the question of usury; and was affirmed on the point of the irrelevancy of the proof offered.

*Shortridge* for pl'tiff.—*Stewart* and *Baylor, contra.*

SAFFOLD, J.—The action was trover, by the present defendant against the plaintiff in error, for a negro boy. A bill of exceptions, taken on the trial, shews, that a contract. in the nature of a mortgage, had been entered into between the parties; it was evidenced by an instrument, signed and sealed by Hamer, in April, 1828; by which it was declared, that for and in consideration of three hundred dollars, to him paid by Harrell, he then delivered into the service and possession of said Harrell, the slave in question; and did thereby authorise said Harrell to keep the slave to his own use, until he, Hamer, should pay back to Harrell the said three hundred dollars, and upon the payment of which, at such time as might suit Hamer's convenience, Harrell was to return the slave to him or his order; and while he kept him, treat him with humanity. Under this mortgage, the def't in error received & retained possession

of the slave for a considerable time : previous to the
institution of this suit, the present plaintiff regained
the possession; and on demand, refused to deliver him
to the defendant.   Shortly before this, the plaintiff
had paid one hundred and eighty four dollars of the
amount borrowed, for which a credit, dated April 1829,
was indorsed on the instrument described, stating it
to be a part of the sum borrowed, " for which said
Harrell was to receive a proportionable part of the
hire of said slave, agreeably to the above named sum."
It appears that L. Powell, esquire, was introduced
as a witness (he having attested the mortgage,) who
on being examined by Hamer, stated that it was the
understanding of the parties that Harrell was to have
the service or use of the slave, in lieu of the interest
of the money, until the payment of the one hundred
and eighty-four dollars, after which he was to ac-
count for a proportionable part of the hire.

   The exceptions further state, that Hamer, the then
defendant, with a view of showing that the three
hundred dollars and interest, had been discharg-
ed by the payment of the one hundred and eighty four
dollars; together with the service of the slave while he
was in Harrell's possession; asked a witness, what was
the value of the hire of the slave for that time; which
evidence the court rejected, as being irrelevant to the
issue.   The then defendant also moved the court to
instruct the jury, that if, from the evidence, they be-
lieved the hire of the negro, or the value of his servi-
ces, was more than the legal rate of interest on the
money advanced, the overplus should stand as a cre-
dit on the original debt, and that if the money paid,
and this overplus, was sufficient to discharge the debt,
they should find for him.   He also requested instruc-

tions to the jury, that if they believed Harrell had received on the loan of money, more than eight per cent. though in the hire or service of the slave, that the contract was usurious, and the verdict should be for the defendant; which instructions the court declined to give.

It is assigned for error, that the court rejected the evidence, and refused the instructions to the jury, as stated in the exceptions.

In support of the assignment, the counsel for the plaintiff in error, has referred to many decisions, mostly of Kentucky, to shew, that the law will not enforce a contract, like the one under consideration, according to its literal import; that courts of justice will give it a just and equitable interpretation, and treat it as a mortgage; or, they will pronounce it usurious and void.

On the contrary, it is insisted, that this contract is peculiar, and must stand on its own merits; that it was at the option of Hamer, to redeem or not—he might have chosen to treat it as a conditional sale, and never have terminated it; consequently, the property must have been at the risque of Harrell. It is, therefore, contended, that the contract is legal and valid, according to its stipulations.

The authorities cited maintain the general proposition contended for, on the part of the plaintiff. In the case of *Richardson, Adm'or &c.* vs. *Brown,*[a] it was [a] 3 Bibb, held, that if one lends money, and takes, as security 207. for repayment, a mortgage on a negro, and contracts to have, for the interest of the money, the *use* of the negro, which greatly exceeds the legal interest, the contract is usurious and void.—That if the lender exhibits his bill in Chancery, to foreclose the equity of

redemption, and the borrower proves the usury, the contract is void, in equity, as well as at law; and the chancellor should dismiss the bill. The statute of that State appears to be, in every respect, material to this case, similar to ours. It is true, the statute there, authorises the borrower to go into equity, to obtain· of the lender, a discovery of the usurious considera-tion; and, in that case, permits him to be relieved· against the payment of interest only. This latter principle, however, is, without statute aid, generally recognised as a rule of Chancery, and is founded up-on the just idea, that he. who applies to a court of equity, for relief, must, himself, do what is equitable.

Many other cases in that State, recognise a simi-lar doctrine; and rule, that, if, on· conditional sales, the vendees secure the repayment of more than the ·money advanced, and legal interest, as the price of redemption, such contracts are usurious.—*Knox* vs.
*Black*[a]—see, also, *Shanks* vs. *Kennedy.*[b]

The same doctrine was held, by the court of ap-peals, in Virginia, in the case of *Robertson* vs. *Camp-* · *bell & Wheeler.*[c] In the case of *Ross* vs. *Norvell,*[d] slaves were conveyed, by a bill of·sale, absolute in its terms, and the vendee had retained the possession of the slaves, for near twenty years, before the bill was filed, charging the contract to have been a mortgage, and praying the right of redemption.

It was ruled, that parol evidence was admissible, to prove that the bill of sale was intended to ope-rate as a mortgage. And, after satisfactory proof, that such was the fact, the mortgagor was permitted to redeem the slaves, on the usual terms, and was de-creed an allowance for the profits of the slaves, while in the possession of the mortgagee.

[a] 1 Marsh. 298.
[b] Ib. 65.
[c] 2 Call's Rep. 354.
[d] 1 Wash. 14.

It may happen, however, that, though conveyances have the conditional form of mortgages, they will be sustained as purchases, without the benefit of redemption. It was so held, in the case of *Chapman* vs. *Turner.*[1Call, 280]—There, the circumstances abundantly shewed, that a purchase of the property, on the condition expressed, and not a mere loan of money, was intended by the parties. The vendee had repeatedly refused the loan. The conditional vendor, did not, at the time appointed, or during his life, offer to return the money; but, his widow, after his death, and when the slave, who was a female, had two or three children, tendered the money, and demanded a redemption, by her suit in Chancery. The court decided against the right of redemption.

It will be observed, that most of the cases cited, were suits in Chancery; and, where relief has been afforded in Chancery, even in cases that were considered usurious and void, at law, the accounts between the parties have been equitably adjusted. In such cases, the lenders of money are, usually, decreed the amount of their principal and interest, as the terms of redemption. In equity, the legal rate of interest on money, is held to be the just compensation for its use—and not the profits, which have been, or could be made, from it. This practice, of allowing principal and interest, in usurious contracts, when necessarily brought into Chancery, is sustained, alone, on the principle, alluded to, that he who seeks relief in equity, must do equity.

But, in law, the rule is otherwise, in all cases of usury, under statutes like ours, which declare such contracts null and void. If they be tainted with usury, the law will not recognise them, in whole nor in part.

It now only remains to apply these principles to the peculiar state of the record before us. It will be observed, that after the written contract between these parties, with the credit indorsed thereon, had been read, in evidence, it was deposed by *L. Powell*, Esq., at the instance of the plaintiff in error, that it was the understanding of the parties, that Harrell was to have the service or use of the slave, in lieu of the interest of the money, until the payment of the one hundred and eighty-four dollars—after which, he was to account for a proportionable part of the hire. It had, also, appeared, in evidence, that, shortly after this partial payment, Hamer regained possession of the slave.—How long, is not shewn; but the inference is, that the time was so very short, (a day, or two, or less) that the hire, for that interval, was not litigated between the parties, or worthy of contest.

In this state of the case, the evidence was offered, which the plaintiff contends, was erroneously rejected. The record states, that Hamer, with a view of shewing that the three hundred dollars and interest had been discharged by the payment of the one hundred and eighty-four dollars, together with the service of the slave while he was in Harrell's possession, asked a witness what was the value of the hire of the slave during that time. But the court rejected the testimony.

It appears from the language of the record, as well as an intimation from his counsel in argument, that Hamer, as defendant below, was unwilling to avail himself of the defence of *usury*: perhaps he considered it odious to do so : this feeling, if it existed, he had a right to indulge, and to abide the consequence. The substance of the question propounded to the witness,

by implication at least, disclaims the defence of usury, and contemplated exclusively the defence, that the amount of money paid, and a reasonable estimate for the hire of the negro, was sufficient to extinguish the demand for the money advanced, and in law should be so applied; this too, after the defendant below had made proof of the understanding between the parties that the use or services of the slave should be set against the *interest* alone of the money advanced. The only legal objection to such contract, was, that it might be, and probably was, usurious ; if so, a court of law would repudiate it entirely, as respects the demand for the money and interest; and a court of equity would so construe it as to reject the usury only, and adjust the accounts as in case of a mortgage.— This, however, being a trial at law, no other objection could prevail than that of usury ; nor could it, without proof, shewing the value of the hire to have materially exceeded the interest on the money. This defence not having been claimed, but as already remarked, disclaimed, the evidence of the value of the hire was truly irrelevant. Without such evidence, there was nothing on which to predicate the instructions which the court was afterwards requested to give to the jury ; neither as respects setting the hire against the balance of the debt, and the interest, nor in relation to usury. Therefore, the judgment must be affirmed. In this result, the court are unanimous.