J. J. HARRISON and ABSOLEM HARRISON *v.* NATHAN HICKS.

*Error from the County Court of Bibb County.*

———◆———

An order for money, *if accepted as a payment*, where no fraud intervenes or failure happens, is sufficient to discharge a debt.

The payment of a debt, although it be made by one who is not a party to the contract, and although the assent of the debtor, to such payment, does not appear, is still the extinguishment of the demand.

Although an equity of redemption is only available in chancery; yet, in the case of a mortgaged chattel, where the debt has been paid, the legal title is perfect in the mortgagor, and may be asserted at law; although the mortgagee should have in his possession a bill of sale for the property.

Nathan Hicks brought an action of trover in the Circuit Court, against J. J. Harrison and Absalom Harrison, for the value of a slave by the name of Harry. The defendants pleaded not guilty; and the jury found a verdict for the plaintiff for the sum of seven hundred dollars.

From the bill of exceptions, taken in the case, it appears, that the slave Harry had been sold on an execution against Edward Hicks and Nathan Hicks, the latter being the security of the former : That Harry was taken as the property of Nathan Hicks; and purchased at the sale by one Wheeler, for the sum of one hundred and five dollars; who agreed that if the said N. Hicks would repay him the money he had paid for the slave, with interest, the slave should be returned to him : That a bill of sale of the slave was given to Wheeler: That some short time afterwards, Wheeler transferred his right in the slave to one Paydon, for one hundred and twenty five dollars, who took a transfer of the bill of sale by indorsement, but whether he obtained possession of the slave,

or not, does not appear : That after the sale to Paydon, Edward Hicks executed a power of attorney to Paydon, authorising him to receive one hundred and twenty five dollars from the Cherokee Agency, due him from the United States, as an emigrating Cherokee; which power of attorney was left by said E. Hicks in the office of the agent; but it does not appear that Paydon was present, at the time the same was executed : That said Hicks entered a credit on his certificate for the amount which said Paydon was authorised to receive: That Paydon twice applied for the money at the agency, before the same was received from the United States, and did not receive the same : That nearly two years after the bill of sale was so transferred to Paydon, he sold the same to the defendants : That, according to the proof, the slave remained in the possession of Nathan Hicks, the plaintiff, until forcibly carried away immediately before the commencement of the suit. The bill of exceptions further shows, that the defendants asked the court to instruct the jury, if they believe there was a contract with Wheeler, in which it was agreed that Hicks might redeem the slave—that he could only do so, by the actual payment of the money which the slave was sold, or by a tender and refusal of the same; which instructions the court refused to give : That the defendants asked the court to instruct the jury, that if Hicks was entitled to redeem the slave, it could only be within a reasonable time ; and that what was a reasonable time could only be determined by a court of equity; which instructions the court refused to give : That said defendants asked that the jury might be instructed, that if Paydon agreed to take the order on the agency for the money, he did not thereby forfeit his lien on the slave, which could only be defeated by the payment of the money ; which instructions the court refused, saying that if Paydon received the power of attorney as a payment, he made it one : That the defendants asked the court to instruct the jury, that the slave being suffered to return into the possession of Hicks, would not

prevent Paydon's lien from continuing, and that said lien would continue until the money was paid, or tendered and refused ; which instructions the court refused : That defendant asked the court to instruct the jury, that although Edward Hicks executed a receipt to the agency office for one hundred and twenty five dollars, he could still recover the same from the agent, Paydon having refused to receive the same, after the sale of the slave ; which instruction the court refused, saying that said Hicks could not recover it, having given his receipt for the same : That the defendants also asked the court to instruct the jury, that a payment of the money by Edward Hicks, without the consent of Nathan Hicks, could not revest the legal title of the slave in the said Nathan Hicks ; which instruction the court also refused to give, but charged the jury, that the purchase by Wheeler of the slave, was sufficient to vest the title in him ; and that the tranfer to Paydon was sufficient to transfer the title of the slave ; and that if the plaintiff had a right to recover, that right must arise from some subsequent contract ; but that Edward Hicks being the principal in the execution, on which the slave was sold, was competent to make a contract with Paydon which would vest the right of the slave in said Nathan Hicks ; and, if they believed the power of attorney, or authority to draw the one hundred and twenty five dollars from the agency, was accepted by Paydon as a release of his title to the slave to Nathan Hicks, and that Edward Hicks had credited his certificate for the same, such transaction was sufficient to revest the title of the slave in said Nathan Hicks, and they, so believing, should find for the plaintiff.

The opinions of the court in the instructions thus refused, and in those given, are, in this court, assigned for error.

STEWART, for Plaintiff in error.
It requires two things to make a payment, namely, tendering on the one part, and receiving on the other. Here the

Harrisons
vs.
Hicks.

party attempts to establish a payment, by proving that a power of attorney was given to the party who was to be paid, an authority conferred on him to receive money. But it does not appear that Paydon agreed to receive this authority as a payment. The nearest approach that is made to proof of acceptance of the payment on his part is, that he applied at the United States Agency office to receive the money in virtue of this authority or power of attorney. But it does not appear by this that he was willing to receive any thing but money ; and it does not appear that the money was ever paid to him. It is said that Hicks gave a receipt for the money to the agency ; but this was not at the instance of Paydon ; and does it not make Paydon's case worse ? If the agency had a receipt for the payment, from Hicks, why should the agency pay Paydon ?

As to what constitutes a payment, I will refer the court to 17 *Johns. R.* 340—7 *Johns. R.* 311—8 *Johns. R.* 34, 389, 304—9 *Johns.* 310—3 *Starkie on Evidence,* 1084—*Searg. & Loub.* 167.

One who owes a debt may be released from the same either by payment or tender. But a tender must be made in money. A payment may be made in something else ; yet it cannot be a payment if it be not received. The power of attorney or order, in this instance, even if it had been received as a payment, would not have been a payment in fact, if the money could not, by means of it, be obtained. Where a debt is paid, or attempted to be paid, by a note, if the note prove to be valueless, it is not a good payment.

We say it was only Nathan Hicks that was authorised by the contract to pay the money and redeem this negro. A payment of Edward Hicks, without the consent of Nathan Hicks, could not be a proper payment. We have nothing to do with Edward Hicks being principal in the debt, on account of which the slave of Nathan Hicks was taken in execution. We are innocent purchasers. There is no evidence that the Harrisons knew any thing of the agreement, said to

have been made, that Hicks might redeem the slave, by the payment of the money for which he was sold.

Harrisons
vs.
Hicks.

PICKENS, *contra.*

If a court refuse to give a charge which might properly have been given, yet if it charge correctly, embracing every thing properly involved in the charge required, the refusal to charge in detail, as asked, is not error.

The question here is this: Had Hicks acquired a new right to the slave by giving an order for money? The negro was given up, although the bill of sale was retained. Could Paydon then, or any body else, get the slave again, until the remedy on the order was exhausted? The question of payment does not arise. Whether the debt was subsisting, or whether it was paid off and satisfied, is unimportant as to the question, who had a right to the slave.

It is a matter of no consequence, who negotiated this matter, whether Edward Hicks or Nathan Hicks. It is sufficient if such negotiation was made, in consequence of which the slave was put into the possession of Nathan Hicks, or, in consequence of which, he was permitted to retain the possession.

This negro, worth seven hundred dollars, was bought by Wheeler for one hundred and five dollars, who promised to restore him to the owner, Edward Hicks, upon the payment of that sum of money, with interest. The slave, or a bill of sale for him, passed into the hands of Paydon, for about the same amount of money. A strong presumption must surely arise here, that Paydon took the slave on the same condition that Wheeler had agreed to hold him. An order was given for the money—for one hundred and twenty five dollars, in favor of Paydon, on account of the claim which Paydon had to this slave. And Paydon's repeated applications for the money, sufficiently prove his assent to the arrangement. The reason he did not receive the money when he applied was,

that the money had not then been received from the United States at the agency office.

The evidence is, that Hicks had possession, and was forcibly deprived of it shortly before the commencement of the suit. Hicks having had peaceable, possession, until after this money negotiation, throws the *onus* on the other party, who ought to show that our possession was not rightful.

But it is said that the Harrisons were innocent purchasers. How can this be so, when the property was in possession of Hicks—when all that the purchaser could get was the transfer of a bill of sale ? The maxim *caveat emptor* properly applies to those who purchase under such circumstances. The purchasers, in this case, the possession of the property not accompanying the deed, must have taken the bill of sale subject to all the equity appertaining to it in the hands of Wheeler and Paydon.

Paydon's lien can cut no figure here ; for the recovery of Hicks cannot impair that lien if it exists. On the contrary, it rather favors it, by placing the very property in Hicks's hands to be subject to the lien. I do not however admit the existence of any such lien after the acceptance of the order on the agency, by Paydon : that released the property from all incumbrance. As to the receipt of Hicks, it was a receipt in favor of Paydon, and not an acknowledgment of the money having been paid by the agency.

STEWART, in reply.

The court assumes, in the charge, what is negatived by the bill of exceptions, that Paydon restored the possession to Hicks, when it does not appear that Paydon ever had the possession.

Paydon's calling at the agency office for the money, does not prove his reception of the power of attorney for payment : it only proved that he wished to get his money. He had been told that he could get it at the agency office ; but when he calls, he gets nothing. The forcible taking away from

Hicks does not appear to have been done by the Harrisons. I contend they received the slave when they purchased, and that they were innocent purchasers. The legal title is obviously in them; and if Hicks has an equitable claim, it can only be asserted in a court of chancery.

By Mr. Justice THORNTON :

This was an action of trover, brought by the defendant. in error, to recover damages for the conversion of a negro man slave, (the property of said defendant) by the plaintiffs in error. The errors assigned, are for the refusal of various charges requested by the said plaintiffs to be given by the court below, to the jury; as also, for charging as the bill of exceptions sets forth.

The evidence, to which reference is had, in the instructions given, and refused, is substantially—that the slave sued for, had been, some time prior to the institution of the present action, sold under an execution, upon a judgment obtained according to the laws and usages of the nation of Cherokee Indians, as to the validity of which, no question is raised on the record, against the defendant in error, and his brother Edward Hicks : That one Wheeler became the purchaser of said slave ; and by an agreement between him and the said defendant, the said defendant was entitled to redeem the said slave, upon the payment of the sum of money, viz. one hundred and five dollars, with interest thereon ; which the said Wheeler had paid for him at the sale. Wheeler retained an absolute bill of sale for him ; and the defendant retained the possession of the slave. Wheeler transferred the bill of sale to one Paydon, who, it would seem ,took the assignment with the full knowledge of the contract between the defendant and Wheeler ; and was only substituted to Wheeler's rights, under the said contract of redemption, between him and the defendant. There was evidence conducing to prove that, whilst Paydon held the bill of sale, Edward Hicks, the brother of the defendant, had, by a transfer of a demand,

Harrisons
vs.
Hicks.

which he held as an emigrating Indian, upon the agency of the government of the United States, for said emigrating tribe of Indians, paid off, and discharged to Paydon, the said sum of money, upon payment of which, as aforesaid, the unincumbered title to the slave, was to be reinvested in the defendant. After this, Paydon transferred his claim to the slave to the plaintiffs. The defendant in error continued in the possession of the slave until a short time before the commencement of this action, when he was forcibly taken from him—by whom, it does not appear.

The several charges which were requested of the court, and refused to be given to the jury, involved three propositions. First—that the debt due by the defendant, on the agreement with Wheeler, could only be discharged by the actual payment of money. Secondly—that a payment, or discharge of it, by Edward, the brother of defendant, without any contract between him and his brother, would not revest the legal title in the defendant. And thirdly—that the facts, constituting the defendant's right to recover in this case, are cognizable only in a court of equity. All these propositions were repudiated by the court, and as I think, very properly.

As to the first, if the transfer of the claim upon the government agency, was in fact, by the contract between the parties, accepted in payment, and discharge of the debt, unless fraud intervened, or some failure happened, such as this record does not disclose, to vitiate the transaction, I know of no principle of law, which will avoid the contract.

The second proposition is equally untenable. It involves a palpable solecism; for the payment and discharge of a debt, no matter by whom effected, can be nothing more nor less than its extinguishment as a demand. As between the person who paid it, and him for whose benefit it was intended, a question might arise, whether it were purely voluntary or not, which would depend on the circumstance of previous request, or of subsequent assent, either express or implied.

As for the last of these propositions, the right of the defendant, as it appears from the evidence, was clearly maintainable in a court of law. It is true, that an equity of redemption is only available in chancery. But in the case of a mortgaged chattel, where the debt has been paid, the legal title is perfect in the mortgagor. If this principle be correct, a resort to chancery would not be tolerated, even if the mortgagee were in possession of the property. But when the debt has been paid, and the chattel in possession, there can be no doubt of a perfect legal title, the bill of sale notwithstanding.[a]

The charge which *was given*, being in accordance with those principles, was, as we think, altogether unexceptionable.

Let the judgment be affirmed.