# Harmon *v.* Dothan Nat. Bank.

*Assumpsit and Trover.*

(Decided February 12, 1914. 64 South. 621.)

1. *Mortgages; Chattels; Title; Default.*—After default, the legal title to mortgaged property is in the mortgagee, and the only office of a foreclosure is to cut off the equity of redemption.

2. *Same; Foreclosure; Fraud.*—The legal title of mortgaged property being in the mortgagee after default, there can be no conversion by the mortgagee, and fraud, unfairness and negligence in the foreclosure of the mortgaged property under a power of sale therein will not support an action in trover; the mortgagor's only remedy being by bill in chancery.

3. *Same.*—While a mortgagee who has exercised the power of sale to sell at private sale, is chargeable with the reasonable value of the property sold, regardless of the price actually received, in an action

[Harmon v. Dothan Nat. Bank.]

in equity or an accounting and redemption, such remedy lies wholly in equity, and the mortgagor cannot maintain an action at law to charge the mortgagee with the reasonable value of the property so sold.

4. *Same.*—Where a mortgagee in possession after default sells mortgaged chattels at an unauthorized private sale for an amount in excess of the mortgage debt, the mortgagor may recover the excess in an action at law; such action can be maintained only, however, when such excess exists.

5. *Same; Validity of Sale.*—Where the mortgage embraces real and personal property and is foreclosed under power of sale, the mortgagor cannot maintain an action at law on the theory that the sale was void for fraud, where it is made in accordance with the power of sale; non-compliance with the power of sale being the only fraud cognizable in an action at law.

6. *Same; Foreclosure; Vacation.*—Gross inadequacy of price paid by the purchaser at foreclosure sale under power will not of itself invalidate a sale, even in a court of equity.

7. *Same; Trover; Nature of Action.*—While damages are assessed under equitable principles in an action in trover, the action in itself is legal, and can be supported only by title conferring the right to immediate possession. Hence, after condition broken, a chattel mortgagor cannot maintain trover.

(Mayfield, J., dissents, and Sayre, J., dissents in part.)

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Trover and assumpsit by Rush Harmon against the Dothan National Bank. Judgment for defendant, and plaintiff appeals. Affirmed.

The original complaint was in trover for the conversion of certain personal property alleged to belong to plaintiff, and claiming the sum of $2,000 as damages. A count was added by way of amendment for that sum had and received by defendant for use of plaintiff. The evidence showed, without dispute, that plaintiff executed to defendant a mortgage on February 1, 1909, by which he granted, bargained, sold, and conveyed to defendant the chattels in question, and 393 acres of land: the land being subject to a prior mortgage for $2,500.

The defeasance clause of the mortgage is as follows: "If default is made in the payment of any obligation herein secured, or the grantor shall in any way dispose

or part with posession of any of said property, if said mortgagee or his assigns shall see fit to do so, it is authorized, before or after maturity of said debt, at any time to take possession of said property, * * * to sell said personal property and real estate at public outcry or private sale, and to so sell the same before or after taking possession, and whether in possession at time of sale or not, and with or without notice of the time and place and terms of sale at its election, and, in case it gives notice, to determine what kind it will give, to make said sale as and where it shall deem best to it for cash or on credit, to become purchaser at any such sale of either the real or personal property sold, to make deeds of all such sales, and accept the amount bid, and waive the right to question its adequacy"—followed by the usual provisions as to the disposition of the proceeds of the sale.

The amount secured by the mortgage, including a subsequent advance, was about $1,500. The mortgagee advertised a foreclosure sale of the mortgaged property on December 9, 1909, to be held on December 10, 1909, on which latter date, pursuant to the advertisement, the land and certain of the chattels were sold under the power in the mortgage. The land brought $300, the sawmill, being subject to an unpaid purchase-money lien of $250, brought $100, and the other chattels sold in a lump brought $300. At the conclusion of the evidence the trial court directed a verdict for defendant, and there was verdict and judgment accordingly.

ESPY & FARMER, for appellant. The advertisement was void and the mortgagee must account to the mortgagor for the reasonable value of the property sold.— Johnson v. Selden, 140 Ala. 421; Wood v. Lake, 62 Ala. 489; 27 Cyc. 1466-77.

[Harmon v. Dothan Nat. Bank.]

A. E. PACE, and W. R. CHAPMAN, for appellee. The fact that the property was sold at private rather than public sale does not invalidate the sale.—Jones on Mortgages, 796-7. Inadequacy of price is not sufficient.— *Ward v. Ward,* 108 Ala. 278; *Hunter v. Mellen,* 127 Ala. 343. The proceedings in bankruptcy is res judicata of the matter here presented, and appellant cannot now open the controversy.—*Gilbreath v. Jones,* 66 Ala. 129; *Greenwood v. Warren,* 120 Ala. 71.

SOMERVILLE, J.—Plaintiff mortgagor seeks to recover damages from defendant mortgagee under his trover count on the theory that an unfair foreslosure sale of the mortgaged chattels is void or voidable at the suit of the mortgagor, and that such a sale is an unlawful conversion of the property. Under his count in general assumpsit for money had and received, he seeks to recover from defendant mortgagee the difference between what the chattels actually sold for and their reasonable value.

Under the theory of mortgages prevailing in this state, nothing can be clearer than the proposition that after default the *legal* title of the mortgagee is perfect. Indeed, foreclosure adds nothing to the legal title, and its only office and value is to cut off the equity of redemption. The mortgagee's legal title carries, of course, the right of possession, and, in the case of chattels, possession taken by the mortgagee after default leaves in the mortgagor no interest except an equity of redemption—which is cognizable and enforceable only in a court of equity.

If it were conceded that an injury to the equity of redemption (as by fraud, unfairness, or negligence in the manner of its extinction by foreclosure under the power of sale, such as would authorize a court of equity

to set aside the foreclosure upon an application to redeem) would support an action at law *on the case* for damages for the loss thereby inflicted on the mortgagor, it is clear that the mortgagor's loss of title and right of possession after default excludes any right of action in trover for a *conversion,* no matter what the mortgagee may do with the property.—*Draper v. Walker,* 98 Ala. 310, 313, 13 South. 595; *Marks v. Robinson,* 82 Ala. 69, 2 South. 292; *Holman v. Ketchum,* 153 Ala. 360, 45 South. 206; *Snead v. Scott,* 182 Ala. 97, 62 South. 36, 39; *Heflin v. Slay,* 78 Ala. 180. As stated by a leading text-writer, "a sale of the entire property by the mortgagee, entitled to possession, before foreclosure, does not amount to a conversion of it for which the mortgagor may maintain an action in the nature of trover."—Jones on Chat. Mortg. § 435. So, it is said by Mr. Freeman: "In case the mortgagee acts wrongfully and unfairly in thus disposing of the property, the mortgagor had no remedy at law, but must resort to a bill in equity in the nature of a bill to redeem. So far as legal rights and obligations are concerned, after forfeiture the mortgagee may treat the property as his own, and deal with it as he may choose, without incurring liability at law." Note to *Wygal v. Bigelow,* 42 Kan. 477, 22 Pac. 612, 16 Am. St. Rep. 495, 501. To the same effect is the text of Jones on Chat. Mortg. §§ 793, 801.

It is evident that, when foreclosure sales are characterized by courts as *invalid* by reason of unfairness or irregularity, no more can be intended than that they are invalid *as foreclosures,* and that they are therefore not effective to cut off the equity of redemption. See *Kelsey v. Ming,* 118 Mich. 438, 76 N. W. 981; *Murray v. Erskine,* 109 Mass. 587. See, also, Jones on Chat. Mortg. § 791; 16 Am. St. Rep. 501, note.

In this state it is settled that a mortgagee who has exercised a power to sell at *private sale* is chargeable in

equity upon a bill for accounting and redemption, with the reasonable value of the property sold, regardless of the price actually received.—*Zadek v. Burnett,* 176 Ala. 80, 57 South. 447. The same doctrine has been recognized in an action at law by the mortgagee to recover a deficiency judgment on the mortgage debt after the foreclosure by private sale under the power, and such an action may be defeated in whole or in part by pleading and showing that the reasonable value of the property sold was in excess of the price received and credited.—*Johnson v. Selden,* 140 Ala. 418, 37 South. 249, 103 Am. St. Rep. 49.

This doctrine, founded on sound policy, is applicable, as the authorities all clearly show, only to *private* sales under the power. See Freeman's Note to *Johnson v. Selden, supra,* 103 Am. St. Rep. 56, par. IV; Jones on Chat. Mortg, §§ 707, 708, 773; 7 Cyc. 107b.

It furnishes no support, however, for an independent recovery by the mortgagor in an action at law. As held by practically all the authorities which proceed, as we do, upon the theory of an absolute legal title in the mortgagee after default and possesion taken by him, and under distinct systems of procedure for law and equity, the mortgagor's only remedy is by bill in equity for redemption, with an accounting for the reasonable value of the property, if injured or destroyed, or for any reason unavailable for redemption.

This remedy was open to the mortgagor in this case, and by it he might have obtained full and ample redress for every wrong injuriously affecting his purely equitable rights.

An exception may, perhaps, be recognized where a mortgagee in possession after default sells the chattels at unauthorized private sale for an amount in excess of the mortgage debt. There is such an intimation

in *Draper v. Walker,* 98 Ala. 310, 314, 13 South. 595, 597, where it is said that, "if the purchase price received by the first mortgagee exceeded the amount of his debt, the surplus, ex æquo et bono, belonged to the holder of the equity of redemption, for which assumpsit would lie." But we have not such a case before us, and need not consider it.

The only other theory upon which plaintiff might recover in assumpsit would require proof of defendant's receipt of a purchase price at the foreclosure sale in excess of the mortgage debt, and on the undisputed evidence there was no such surplus.

It is to be noted that the decisions in those states which regard the mortgagee's interest as a lien merely, or which have abolished the distinction between legal and equitable forms and procedure, are not safe guides elsewhere. An example will be found in *Wygal v. Bigelow,* 42 Kan. 477, 22 Pac. 612, 16 Am. St. Rep. 495.

Since the foregoing opinion was written and adopted, the writer has examined the dissenting opinion filed by Justice MAYFELD.

The criticism upon the majority opinion seems to be founded primarily on the assumption that it denies any remedy at all to mortgagors who complain of unfair foreclosure sales, and upon the further assumption, also, that the common-law theory of mortgages has been abandoned by the law courts of this state; that trover is an equitable action, and hence will lie for injuries to purely equitable rights; that every foreclosure sale which may be deemed *unfair* is utterly void, both in law and equity; that every public foreclosure sale, however, regular and free from actual fraud, may be impeached before a jury in common-law action for damages; and especially that, in such an action, the mortgagee is liable because of his failure to make the property bring its fair value.

The conclusion reached by Justice MAYFIELD in this case is founded essentially on the hypothesis that the foreclosure sale in question was a nullity, and of no effect whatever.

I notice briefly these several propositions:

1. The remedy in equity by bill for redemption, or bill in the nature of a bill for redemption, is well established by the authorities, and it is vain to deny either its existence or its efficiency.—16 Am. St. Rep. 501, note; 7 Cyc. 117. The rights involved are peculiarly of equitable cognizance. "A court of equity, in which each party can be compelled to do equity, is the appropriate forum for the consideration of all other questions than fraud in the execution of the [mortgage] conveyance." —*Kelly v. Mobile, etc., Ass'n,* 64 Ala. 501, 503. "After the law day　*　*　*　nothing remains in the mortgagor but the equity of redemption, of which, as between mortgagor and mortgagee, courts of law do not take notice."—*Toomer v. Randolph,* 60 Ala. 356; *Harris v. Miller,* 71 Ala. 26, 33; *Lomb v. Pioneer Co.,* 106 Ala. 591, 17 South. 670; *Foster v. Carlisle,* 148 Ala. 259, 42 South. 441; *Holman v. Ketchum,* 153 Ala. 360, 45. South. 206.

2. In a long and unbroken line of decisions this court has declared over and over again that the common-law theory of mortgages prevails in courts of law, and that in such courts the mortgagee is regarded as the absolute owner of the mortgaged property after condition broken.—*Welsh v. Phillips,* 54 Ala. 309, 25 Am. Rep. 679; *Toomer v. Randolph,* 60 Ala. 356, 360; *Farris v. Houston,* 74 Ala. 163; *Lomb v. Pioneer Co.,* 106 Ala. 591, 599, 17 South. 670; *High v. Hoffman,* 129 Ala. 359, 361, 29 South. 658; *Foster v. Carlisle,* 148 Ala. 259, 42 South. 441; *Holman v. Ketchum,* 153 Ala. 360, 45 South. 206. And it has been twice specifically held, in accord-

ance with this theory, that the mortgagor cannot maintain trover against the mortgagee for a conversion of chattels after condition broken.—*Draper v. Lewis,* 98 Ala. 310, 13 South. 595; *Snead v. Scott,* 182 Ala. 97, 62 South 36. This rule, of course, is subject to the condition that the mortgage debt has not been tendered before demand or possession taken by the mortgagee.— *Maxwell v. Moore,* 95 Ala. 166, 10 South. 444, 36 Am. St. Rep. 190.

. 3. It is true that trover is frequently referred to as an *equitable* action; but it is obvious that equitable principles are applied only to the *quantum of damages* recoverable, and not to the gravamen of the action. This is explained in *Williams v. Crum,* 27 Ala. 468, where it is said: "In ascertaining the damages in many actions of trover, it is allowable to mitigate them, by investigating and determining what (for want of a phrase of greater accuracy) is called the equity of the case." It clearly appears, also, from the discussion in *McGowan v. Young,* 2 Stew. & P. 160, 171. That the plaintiff in trover can recover only upon a title conferring the right to immediate possession, is the fixed rule of our decisions.—*Rees v. Coats,* 65 Ala. 258; *Draper v. Walker,* 98 Ala. 310, 13 South. 595.

4. It is not the law in this state that every unfair foreclosure sale under power is void at law. The *legal* validity of such a sale depends upon a substantial compliance with the terms of the mortgage.—*Wood v. Lake,* 62 Ala. 489; *Speakman v. Vest,* 166 Ala. 235, 240, 51 South. 980. "At law, in the absence of actual fraud, if the sale has been regular, it is valid."—*Harris v. Miller,* 71 Ala. 26, 33. The actual fraud here referred to is defined as "any artifice or deception used to cheat or deceive. This definition would, however, seem to embrace only actual or positive frauds. But fraud, as under-

stood and denounced in equity, includes all acts, omissions, or concealments which involve a breach of a legal or equitable duty, trust, or confidence justly reposed, which are injurious to another, or by which an * * * unconscientious advantage is taken of another."—*Kennedy v. Kennedy,* 2 Ala. 571, 593.

In a court of law a power of sale is merely part of a legal contract to be executed according to its terms. In a court of equity it is quickened with the elements of a trust, and the donee of the power is charged as a quasi trustee with the duty of fairness and good faith in its execution, to the end that the mortgagor's property may be disposed of to his pecuniary advantage in the satisfaction of his debt.

Any breach of duty as such trustee is cognizable in equity, "and subjected the sale so made, upon the reasonable and appropriate action of the complainants, to a rescission on account of such fraud."—*Randolph v. Vails,* 180 Ala. 82, 60 South. 159, 163.

5. It is obvious that, if any mortgagee who, without actual fraud, and in accordance with the terms of his mortgage, has sold the mortgaged property by foreclosure sale can be compelled to defend his sale before a jury on the issue of bona fides in making it, or of the adequacy of the price received, at the hazard of being adjudged a tort-feasor and mulct in damages therefor, the commercial value of this form of security will be substantially destroyed.

6. Stripped of invective, the charge against this foreclosure sale is that it was made for the purpose of cutting off the mortgagor's equity of redemption, and thus acquiring an absolute title to his property, and that the mortgagee purchased $5,000 of property for $700. Hence it is concluded that a jury may declare the sale a nullity in an action at law for damages.

It is to be observed that the sale was conducted in a manner expressly authorized by the mortgage, by the terms of which the mortgagor voluntarily waived practically all of the formalities and methods upon which he might otherwise have insisted. This court has no authority to declare his contract void, and substitute another in its place, however unwise and improvident it may have been.

No fraud is charged other than the mortgagee's purpose to cut off the equity of redemption and secure a title to the property. But, inasmuch as this is one of the essential incidents of foreclosure as ordained by law, its entertainment and pursuit by a mortgagee cannot, in the absence of oppression be regarded as a vice or a fraud.—*Hunter v. Mellen*, 127 Ala. 343, 348, 28 South. 468; *Security Loan Ass'n v. Lake*, 69 Ala. 456, 44 Am. Rep. 528. Certainly the mortgagee need not, before approaching the auction block, cleanse his heart of all covetousness, as the pious Mussulman cleanses his body before entering a mosque. There is no evidence in the record upon which to ground a charge of fraud or irregularity in this sale, unless fraud is to be inferred from the fact alone that the property brought a grossly inadequate price as compared with its apparent value. It is proper to observe, just here, that defendant's mortgage on the land was subordinate to a prior outstanding mortgage for $2,500, upon which defendant had paid $206 interest shortly before foreclosure; and also that the sawmill was subject to a prior lien of $250, which defendant had also paid. The evidence shows, also, that only one mule was included in the chattels sold under the power, instead of four, as asserted. So that $850 must be deducted from the approximate valuation of $2,000 placed upon the personalty sold, and the net result is that about $1,150 of property sold for $400.

But it has been repeatedly held by this court, and must now be regarded as settled law, that gross inadequacy of the price paid by the purchaser at a foreclosure sale will not of itself, even in a court of equity, invalidate or affect the sale.—*Ward v. Ward,* 108 Ala. 278, 19 South. 354; *Hunter v. Mellen,* 127 Ala. 343, 348, 28 South. 468; *Windes v. Russell,* 150 Ala. 625, 43 South. 788.

It results that the plaintiff was not entitled to recover in this action, and the general affirmative charge was properly given for the defendant.

Affirmed.

ANDERSON, C. J., and McCLELLAN, DE GRAFFENRIED, and GARDNER, JJ., concur. MAYFIELD and SAYRE, JJ., dissent in separate opinions.

MAYFIELD, J.—(dissenting).—If the decision in this case is correct, then all must concede that the law *as to* mortgages cries loudly for statutory relief. If a bank can lend a customer $1,300, and take a mortgage of $3,200 worth of lands and $2,000 worth of personalty, and then buy the whole of this mortgaged property from itself for less than one-half the amount of the loan, and hold all of this property and the balance of the debt against the mortgagor, and he has no remedy, then there is certainly a crying need for a change in the law of mortgages.

I am persuaded that the law does not countenance, allow, or tolerate such oppression of the debtor. Such a doctrine or rule of law, to my mind, works nothing better than oppression, cruelty, and tyranny. A law that allows a creditor to collect from his debtor nearly three times what is owing, and to still hold one-half of the debt against him, is nothing less than oppressive

and tyranous. A contract which so provides ought not to be enforced in any court of law or equity. Such contracts, if sanctioned by the common law, ought to be declared void by an express statute.

I do not know whether the evidence shown by this record is true or false, and therefore I do not attempt to express an opinion on this point; but, if the evidence contained in this record is true, and all that it tends to show was done was legal, and according to the contract and the law, then Shylock, comparatively speaking, was a philanthropist going about doing charity.

The error in the decision of this case is hinged upon treating it as a fact conclusively shown that there was a valid foreclosure of the mortgage. If the evidence in this case is true, there was never any foreclosure of the mortgage. It was open for the jury to find that the pretended foreclosure, even under the almost unlimited powers contained in the mortgage, was a veritable sham, made, not for the purpose of foreclosing the mortgage, and giving the mortgagor the benefit thereof, but for the purpose of cutting off his equity of redemption, and of thus acquiring an absolute title to his property without due process of law. Is it possible that the law will tolerate and sanction a proceeding like the one shown by this evidence? I do not see how it is possible to say that there was any foreclosure of the mortgage in question. It is true there was a mock foreclosure sale; but it was nothing better than a mockery. It could have been conducted as it was for no other purpose than to deprive the mortgagor of property and rights under the mortgage. If the plaintiff's evidence was true, the foreclosure proceeding was not only a palpable fraud, perpetrated upon him, but was a fraud upon the contract and the law, and against public policy. If there was no foreclosure sale, surely no court would hold that the mort-

[Harmon v. Dothan Nat. Bank.]

gagor was without a remedy in a court of law. I do not understand the majority opinion to hold otherwise.

It is intimated, if not said, that plaintiff's sole remedy is in a court of equity on a bill to redeem. In this contention by Brothers are in error. If this record speaks the truth, there can be no redemption as to the chattels. A bill to redeem is for the purpose of ascertaining and paying the mortgage debt, and obtaining back the mortgaged property. The evidence shows that the mortgage debt has been thrice paid, that the chattels have been converted, and that the money, the proceeds thereof, has been appropriated by the mortgagee. The mortgagee is not in possession of the property, and the mortgagor could not acquire his property on a bill to redeem. The most, if not all, of it has been destroyed, consumed, or scattered to the four winds by the mortgagee, so as to defeat relief by a bill to redeem. A bill to redeem which would set forth as facts what the evidence in this record tends to show them to be would contain no equity, for the reasons above pointed out.

The only possible relief which could be awarded would be by a judgment or decree over, in favor of complainant, in the way of damages. This would not give the bill equity. While such decrees over may be rendered in proper cases, they are merely incidental to the main equity of the bill; that is, to ascertain and pay the mortgage indebtedness, and to repossess the mortgagor of the property. There was no necessity to ascertain the mortgage indebtedness or to pay it—the amount would be shown to be certain, and to have been paid; and neither the property nor the title thereto could be restored to the mortgagor, so there would be no equity in the bill. If this plaintiff has no remedy in a court of law, it is certain he has none in a court of equity. If he has no remedy, what has become of the ancient and

almost sacred maxim, "Where there is a wrong there is a remedy"?

The law is so well settled in this state that it needs no citation of authority, that a mortgage passes the legal title to the mortgagee, subject to be defeated on the performance of the conditions as to payment, etc., and that after the law day of the mortgage the only right of the mortgagor is to redeem, and that a valid foreclosure cuts off and extinguishes the right of redemption. It is equally well settled, however, that fraud vitiates every transaction into which it enters. Therefore, if a formal foreclosure is in fact and in truth no foreclosure, but is a mere sham, and for the purpose of defeating the rights of the mortgagor, a court of law or of equity will so treat such pretended foreclosure, and treat the parties as if there had been no foreclosure; and a party to such a pretended and sham foreclosure, whether he be the mortgagee or a stranger, will be treated in law as a trespasser ab initio, and, if a purchaser at such sham foreclosure sale, with knowledge of the facts, subsequently dispose of the property, he will be held liable as for a conversion for the amount in excess of the mortgage debt, interest, and costs of a proper foreclosure.

"No man shall profit by his own wrong." This is a venerable and righteous maxim of the law. It applies as well to corporations and banks and mortgagees as to natural persons. Is it not a wrong for a creditor, though it be a bank, to so manipulate a foreclosure as to collect $5,000 on a $1,300 indebtedness, and still hold one-half of the indebtedness against the debtor mortgagor? If this was a *wrong*—and surely it was—shall he who wrought it profit by it? He may, says the decision in this case.

I concede, of course, that if there was a foreclosure of the mortgage in question, then the plaintiff cannot recover in this action. This is hornbook law in this

state; but it is equally well settled that, if the pretended foreclosure was a mere sham and fraud, then it was void absolutely, and the status is just as if there had been no pretended foreclosure. If there was no foreclosure, then, I take it, no one could dispute the right of the plaintiff to recover, both in trover and in an action for money had and received.

It was shown, or offered to be shown, by the plaintiff that the mortgagee bank received nearly or quite $5,000 for the sale and conversion of the mortgaged property. The bank received more than $3,000 for the land alone, which amount nearly thrice discharged the mortgage debt, and, if this sale was had before the sale of the chattels, the mortgage was satisfied, and the title to all the chattels, by virtue of the statute (section 4898 of Code), revested in the mortgagor; and hence a subsequent sale of the chattels was a conversion. If the chattels were sold first, then as soon as the mortgage debt was paid the title to the remainder of the chattels and to the land was reinvested in the mortgagor, and a sale of the remainder of the chattels was, of necessity, a conversion, and the proceeds of the sale of the lands could be recovered in an action for money had and received. As to this there would seem to be no doubt. There are repeated decisions of this court to this effect. In the case of *Frank v. Pickens,* 69 Ala. 369, 370, 371, it is said: "That payment of the debt secured by a mortgage of chattels, whether made before or after the law day, operates an extinguishment of the title of the mortgagee, whether the payment is made in money, or by holding the mortgagee in possession to account for the use, income, or profits, was settled in this court at an early day. The payment is recognized, and the extinguishment is as operative in a court of law as in a court of equity, and the mortgagor may maintain trover or detinue for the recovery of the chattels.—*McGowen v.*

*Young,* 2 Stew. & P. 160; *Hamer v. Harrell,* 2 Stew. & P. 323; *Deshazo v. Lewis,* 5 Stew & P. 91 [24 Am. Dec. 769]; *Harrison v. Hicks,* 1 Port. 423 [27 Am. Dec. 638]; *Brown v. Lipscomb,* 9 Port. 472; *Sims v. Canfield,* 2 Ala. 555; *Geron v. Geron,* 15 Ala. 558 [50 Am. Dec. 143]; *Shiver v. Johnston,* 62 Ala. 37."

If the mortgagee was in possesison of the chattels in question, and the mortgage debt had been paid, as it was, by a sale of the land, the mortgagor could then redeem by a bill in equity, or recover the chattels by an action in detinue, which is analogous to a bill to redeem. But as the mortgagee converted the chattels, or a part of them, after the debt was paid by a sale of part of the mortgaged property, the only remedy of the mortgagor was an action in trover for conversion, or he could waive the tort and sue in assumpsit for money had and received. These actions are all equitable, and may be maintained in a court of law when the mortgage debt was fully paid, as the evidence tends to show it was in this case, by private sales after the pretended foreclosure. This has been held by this court in the case of *Sims v. Canfield,* 2 Ala. 562, where it is said: "The action of detinue is the only one at law which is at all analogous to a bill to redeem a specific chattel. In that, the chattel is recovered with damages for its detention. When the bill is to redeem, the decree is for the delivery, and, if necessary, an account will be taken to ascertain the reasonable profits, if any have accrued. In either case, it is conceived, the plaintiff must fail, if he has no subsisting title in himself at the time when the suit is commenced. The action of trover has no analogy to such a suit in equity, because the recovery is in damages merely, and interest on the value of the chattels when converted is given from the time of the conversion in lieu of the profits."

In the case of *Harrison v. Hicks,* 1 Port. 423, 431, it is said: "The right of the defendant, as it appears from the evidence, was clearly maintainable in a court of law. It is true that an equity of redemption is only available in chancery. But in the case of mortgaged chattel, where the debt has been paid, the legal title is perfect in the mortgagor. If this principle be correct, a resort to chancery would not be tolerated, even if the mortgagee were in possession of the property. But when the debt has been paid, and the chattel in possession, there can be no doubt of a perfect legal title, the bill of sale notwithstanding."

Trover is an equitable action, especially so in actions between mortgagor and mortgagee. This court at an early day so declared.

In the case of *McGowen v. Young,* 2 Stew. & P. 160, the subject was discussed at length, and the rigor and the technicalities of the common law were departed from; and this court has always followed and extended the doctrine of *McGowen v. Young* until the decision in this case. This is the first decision to go back to the rigor and technicalities of the English common law on the subject. It was decided in that case that: "The action of trover, like the action of assumpsit, is competent to administer justice between parties, according to the rules of equity. The courts of law, in actions of trover, are authorized to investigate the justice and equity of the particular case, in a similar manner and on similar principles to those by which, in such courts, the defense of partial failure of consideration is sustained."

There was a dissenting opinion in that case in line with the majority opinion in this case. The majority opinion in that case prevailed in this state until the decision in this case, which goes back to the rigor of the

common law which protected the creditor, but not the debtor. The action of trover, as between mortgagor, and mortgagee, has ever been treated in this state as competent, in many respects, to investigate and determine the equity of the case.

There is no doubt that a mortgagee, if authorized under the powers of his mortgage, may foreclose by either public or private sale, with or without notice, and thereby cut off and terminate the mortgagor's legal and equitable rights to the mortgaged property. This is common law, common knowledge, and common sense. But in such case there must be a real, bona fide foreclosure sale. A mere sham or form, when there is no real sale in fact, will not have the effect of a real sale. A mere pretext, a mere sham sale, where the mortgagee both sells and buys (even under his authority so to do) for a mere song, and for the sole and real purpose of depriving the mortgagor of his right to redeem, will not have the desired effect of a real and bona fide foreclosure sale. Courts of law, as well as courts of equity, will treat such pretended sales as they ought to be treated—as if they had never occurred—and treat the mortgagee as in possession without foreclosure; and, if the mortgagee subsequently sells the property as his own, the purchase price will be applied as a payment pro tanto on the mortgage debt. If the subsequent purchase price, the proceeds of the sale, be equal to, or exceed, the mortgage debt, with interest thereon, the mortgage is paid, and the title to the remainder of the property mortgaged, if there be such, is, by virtue of the statute (section 4898, Code), reinvested in the mortgagor, and a subsequent sale or disposition of such remainder will be treated in a court of law or of equity as a conversion of the remainder of the mortgaged chattels. That this is the law, I deem it well settled and undoubted but for the

decision in this case. My Brothers have evidently fallen into gross error by acting upon the theory that as to such bogus foreclosure sales—sales of chattels—the mortgagor is remitted solely to a court of equity, either to set aside such bogus, pretended, foreclosure sale, or to file his bill to redeem. A court of law is just as competent, and in some cases more competent, to declare such a sale of chattels absolutely void and award appropriate relief.

Mr. Cooley, in his work on Torts, while not treating the subject fully, clearly recognizes the doctrine that trover will lie by the mortgagor, against the mortgagee, where there are such acts by the mortgagee as will impair or defeat the mortgagor's right to redeem. An assertion of absolute ownership by the mortgagee, without a valid foreclosure is a conversion. Though the mortgage authorizes the mortgagee to take possession for the purpose of foreclosure, if he forecloses contrary to the powers, or if he sells more of the property than is necessary to satisfy the mortgage, this is a conversion as to the excess.—Cooley on Torts, 865, 866; *Colby v. Kimball*, 99 Iowa, 321, 68 N. W. 786; *Omaha Co. v. Rogers*, 35 Neb. 61, 52 N. W. 826.

To say, as is said in this case, that a mortgagee of $5,000 worth of property, consisting of a farm of 390 acres, a sawmill, and cotton, corn, fodder, hay, etc., pledged to secure a debt of $1,300, can, without having any of the property present at the place of sale, offer it for sale in bulk, and buy it for a mere song, and thus destroy the mortgagor's right to redeem, and then at private sale sell the property in separate lots and for divers prices aggregating $5,000, and not be liable to the mortgagor in trover as for money had and received, is to my mind nothing short of gross cruelty, oppression, and fraud, as to the mortgagor, and even the law

itself. I cannot and will never voluntarily subscribe to any such doctrine. None of the cases or the text-books cited in the majority opinion announce or uphold such a doctrine.

No one doubts that a mortgagee, after a valid fore-closure, is not liable to the mortgagor, in trover, and, if the property brings less than the mortgage debt, and interest, and costs, he is not liable at all, in any form of action, in a court of law or of equity. But this case decides that, if authorized by the mortgage to sell at either public or private sale, and with or without notice, the mortgagee can then, by a mere mock, sham, or pretended sale, under the power, acquire the absolute title to thousands of dollars' worth of property for a mere song, and then sell such property at private sale, and therefrom receive hundreds of dollars, and still hold the debt against the mortgagor, and not be liable in a court of law as for conversion, or as for money had and received. I do not believe this is now, even was, or ever ought to be the law of this or any other civilized and enlightened country.

In order that there can never be any doubt as to what some of the evidence in this record showed, or tended to show, I copy a part of it in this opinion, and, if it is true—whether it was or was not true was a question for the jury—I do not understand how the court can deny this mortgagor all relief. I know the majority opinion avoids the hardship and oppression by suggesting that the only relief is in a court of equity, and not in a court of law; but I think I have conclusively shown that this is purely theoretical and technical, and has no basis in fact or practice. A court of law, as well as a court of equity, can pronounce a sham foreclosure sale of chattels void, and hold the mortgagee as if there had been no pretended foreclosure.

[Harmon v. Dothan Nat. Bank.]

If there was no public foreclosure, then, when the private sales brought in enough to pay the debt, interest, and costs, the remainder of the property was that of the mortgagor, and the sale by the mortgagee of any property in excess was a conversion; and why the mortgagor, as to this excess, cannot recover in trover, or, waiving the tort, as for money had and received, I cannot understand. And I submit that no valid reason is assigned, or can be assigned, for the majority decision.

This record was originaly assigned to me, and after a careful and thorough study of the same I prepared an opinion intended for the court; and this opinion, in my judgment, makes a correct disposition of the appeal, giving the reasons, and citing the authorities. The majority of my Brothers did not agree with me, and hence that opinion did not become the opinion of the court. However, counsel have raised and argued several important and material questions which are not treated in the majority opinion, and, for that reason, I append to my dissent the original opinion prepared by me, so changed as to express only my own views.

There is one very important question raised on the appeal which is not treated at all in the majority opinion. It may be said, however, that, if the majority opinion were correct, it would not be necessary to treat this other question.

My original opinion was substantially as follows:

Appellant sued appellee in trover for the conversion of $2,000 worth of personalty. The complaint was amended by adding a count for money had and received. The trial resulted in verdict and judgment in favor of defendant, from which judgment, plaintiff appeals.

Plaintiff assigns six errors and grounds of reversal; the last being the giving of the affirmative charge in favor of the defendant.

The property alleged to have been converted was included in a mortgage, or mortgages, executed by the plaintiff to the defendant, to secure an indebtedness of about $1,300. The property, or the greater portion thereof, was formally sold by the defendant under a power contained in the mortgage, and the purchase price applied to the indebtedness, secured by the mortgage, after paying off one or two prior and paramount liens on certain of the articles or items of property. The prior liens amounted to $300 or $400. The mortgage indebtedness at the date of the sale amounted to $1,300. The personal property alleged to have been converted consisted of 4 mules, 30 hogs, 2 cows, 1 bale of cotton, 1 sawmill, 1 organ, 2 wagons, 2 buggies, 1 lot of plow tools, 1,000 pounds fodder or hay, and 400 bushels of corn, and was estimated to be worth $2,212.50. There was also included in the mortgage 390 acres of land, estimated to be worth about $3,250. All this property was advertised for one day, and was sold on the next, and sold in bulk, except the sawmill.

The auctioneer making this sale testified as follows: That he had seen the mortgage from Rush Harmon to the Dothan National Bank, and that he sold the property embraced in said mortgage in the foreclosure sale. He says: "I made the memorandum of sale, and signed my name to it. I remember making the sale in front of the courthouse. My recollection is that the Dothan National Bank bought the property. Mr. Lillian Crawford, who was the cashier of the Dothan National Bank, bought the property for the bank. My memorandum shows that the Dothan National Bank bought the property. Mr. Lillian Crawford was there and bought it for the bank. The real estate and the personal property in the mortgage was bought the same way by the Dothan National Bank. All the stuff was sold at public

outcry for cash in front of the courthouse. There was no sawmill here at the courthouse. There were no hogs here. There was no cotton here. There was no fodder here. There were no mules here. There were no cows here; no log carts or wagons here. There was no plow tools here. There was no corn here. There were no mules here. None of the property that I sold was here. I put up all the personal property and sold it in a lump for $300." The witness read aloud from the memorandum of sale made by him: "The sawmill brought $100; but it does not state who bought it. About 250 bushels of corn, 3 cows, 1 organ, 1 bale of cotton, 30 head of hogs, sold for $300 in bulk. The memorandum shows what I got for all the property."

The plaintiff here introduced the memorandum of sale made by T. W. Butler, as auctioneer, at the foreclosure of the mortgage, which was in words and figures as follows: "I, T. W. Butler, auctioneer, hereby certify that on this day I sold the lands described on the reverse side of this sheet at public outcry for cash before the courthouse door in Dothan, Ala., at the hour of 1:30 p. m., and at said sale the Dothan National Bank became the last, highest, and best bidder, and as such became the purchaser at and for the sum of $300 in cash; said sale was made to satisfy the within-described mortgage. T. W. Butler, Auctioneer."

The witness Butler further testified that the property mentioned in the memorandum of sale was the property mentioned in the mortgage.

Ben Harmon, son of and witness for the plaintiff, testified as follows: The he knew the plaintiff, and was his son. That in the fall of 1909 he was in the possession, control, and management of his father's property in Houston county, Ala. That his father, Rush Harmon, was in bankruptcy, a receiver was appointed for

the estate, and that he (witness) was put in the possession, control, and management of the property belonging to Rush Harmon by the receiver in bankruptcy. "I finished gathering the crops, housed it, looked after the stock, and then turned it over to Mr. Henry Williams on a mortgage made by Rush Harmon to the Dothan National Bank. I turned over 2 mules belonging to the plaintiff, and they were worth $325. 1 turned over about 30 hogs, and they were worth $175. I turned over 2 cows, and they were worth $65. I turned over 1,000 pounds of fodder, and it was worth $7.50. I turned over a large lot of corn tops. I turned over a sawmill, complete, and it was worth $700 or $800. I turned over an organ, and it was worth $60. I turned over 2 wagons, and they were worth $50. I turned over a bale of cotton, and it was worth $35. I turned over 2 buggies, and they were worth $20. I turned over a lot of plow tools, and they were worth $25 or $30. I turned over 400 bushels of corn, and it was worth $250. I know of my own knowledge that Mr. Henry Williams was representing the Dothan National Bank, and I turned over to him all the propetry on a mortgage that he had for the Dothan National Bank. Mr. J. R. Faircloth is the president of the Dothan National Bank, and he asked me to look after this property until Mr. Williams came down, and I took charge of all the property for the Dothan National Bank, and turned it over to Mr. Williams, and he hauled all of the property away."

Henry Wofford, also a witness for the plaintiff, testified: "I know what became of the Rush Harmon hogs; there were 25 or 30 of them. I bought them. The reasonable market value of these hogs was $160. I bought them from Henry Williams."

The plaintiff offered to prove that the defendant had received $3,250 for the land embraced in the mortgage;

but the court declined to let him make the proof, holding that such proof was not admissible or relevant in this action. There was proof, and there were offers to prove, that the defendant had received other sums of money for the mortgaged property.

The power of sale in the mortgage authorized either public or private sale, with or without taking possession of the property, and with or without notice of the time, place, or terms of the sale, and authorized a sale on any terms that might seem best to the mortgagee.

Notwithstanding these full and almost unlimited powers contained in the mortgage, the mortgage certainly contemplated a real sale by the mortgagee in good faith. It was certainly not contemplated that the mortgagee could go through a mere form of foreclosure, and acquire an absolute title to all this property—property worth several thousand dollars—by allowing a nominal credit of a few hundred dollars on the mortgage debt. Surely it did not authorize the mortgagee to acquit property reasonably worth three or four times the debt secured, and stil hold the debt, or a great part thereof, against the mortgagor. Surely neither the law nor equity will sanction or uphold such a construction of the powers of sale in a mortgage, however full and unlimited they may be.

In a case something like this heretofore before this court, Justice DOWDELL, now Chief Justice of this court, said: "Although the mortgagee, by the terms of the mortgage, was authorized to sell the personal property embraced in the mortgage at private sale, this did not relieve him, in taking possession of and selling the property, from the duty of acting in the utmost good faith in selling the same. In selling the property at private sale for the satisfaction of his mortgage debt, it was his duty to sell it at a fair and reasonable valuation, and,

failing to do so, he became liable to the mortgagor for
such failure. We think there can be no doubt of the
right of the mortgagor to show his claim against the
mortgagee by showing the unfairness of the sale, and to
this end that the property was sold for greatly less than
its fair and reasonable value. See Jones on Chattel
Mortgage (4th Ed.) p. 702, § 708. Here the property,
which consisted of different items, such as mules, wag-
ons, carriages, and farm products, was sold en masse
or in a lump. This in itself was prima facie evidence of
unfairness.—Jones on Chattel Mortgages (4th Ed.) p.
781, § 797. The question of value was one for the jury."
—*Johnson v. Selden,* 140 Ala. 421, 422, 37 South. 249,
250 (103 Am. St. Rep. 49).

It is said by Mr. Jones, in his work on Chattel Mort-
gages (5th Ed.) pp. 995, 996, 998, §§ 792, 793, 796: "If
a power of sale does not require the giving of any notice
of the sale, the mortgagee can make a valid sale either
at public or private sale, and need not give any notice
of it, unless he choose so to do. But nevertheless the
sale, to be binding, must be a fair one." "A mortgagee
may lawfully sell and transfer the mortgaged property
at private sale after taking possesion of it upon default
for he has then the absolute legal title. Under a pow-
er of sale which does not require notice of sale to be
given, the mortgagee has the option to give notice or
not, as he may choose, and he may sell at public or pri-
vate sale; only, to make the sale binding, it must be fair.
But he is, however, liable to the mortgagor for any in-
jury sustained by him through the omission of the mort-
gagee to comply with the terms of a power of sale con-
tained in the mortgage." "If the power of sale be gen-
eral and unrestricted as to the time and place of sale,
these may be fixed by the mortgagee at his discretion,
subject only to the general rule that he shall conduct

the sale in common fairness toward the mortgagor. As a general rule, the property should be in view of the bidders, so that its value may be readily estimated."

In an Indiana case it was said: "If it appeared that the price paid by a mortgagee purchasing at his own sale was grossly inadequate, or that the property was sacrificed, the sale ought to be set aside at the election of the mortgagor; and if, it were shown that the mortgagee had converted the property after a merely colorable sale, or refused to acknowledge the mortgagor's right to redeem, he should be held to account for its fair value at the time of its appropriation."—*Lee v. Fox*, 113 Ind. 98, 14 N. E. 889, 4 Dec. Dig. 1170.

In a Kansas case Horton, C. J., spoke as follows upon this subject, and his language is apt in this case: "The unfair or fraudulent sale of mortgaged property by a mortgagee should not and will not defeat or extinguish the rights of the mortgagor. The mortgagee has no right by any unfairness to sacrifice the property, and deprive the mortgagor of the surplus over the debt, which by a fair and honestly conducted sale might arise. If the property consist of many different articles which can be easily offered for sale separately, or in lots or parcels, a sale of the whole in a lump, or in two lumps, in some cases might be regarded as an unfair mode of sale, especially if it were shown that the property brought much less at the sale than its actual value. —Jones on Chattel Mortgages (3d Ed.) § 797; *Hungate v. Reynolds*, 72 Ill. 425. We cannot say, as a matter of law, upon the allegations in the answers, that the property was wrongfully and unfairly disposed of, nor can we say that the property was sold fairly and in good faith according to the terms of the mortgage. These are matters for a jury under proper instructions from the trial court. The defendants were entitled to have

a fair and bona fide sale. The trial court should have permitted the testimony to go to the jury to determine whether this was done or not."—*Wygal v. Bigelow*, 42 Kan. 477, 484, 22 Pac. 612, 614, 16 Am. St. Rep. 495, 498.

In a note to the report of this Kansas case (16 Am. St. Rep. 499), Mr. Freeman states the rule which this court deems the proper one and has adopted: "Under a power contained in the mortgage, the mortgagee may upon forfeiture, sell the property at a bona fide sale, and thus cut off the mortgagor's equity of redemption. To be effective in this particular, the sale must in all respects be fairly and honestly conducted, and not clandestine nor collusive. The mortgagee has no right by any unfairness to sacrifice the property for less than its fair market value.—*Bird v. Davis*, 14 N. J. Eq. 467; *Walker v. Stone*, 20 Md. 195; *Charter v. Stevens*, 3 Denio [N. Y.] 33; 45 Am. Dec. 444; *Freeman v. Freeman*, 17 N. J. Eq. 44; *Warwick v. Hutchinson*, 45 N. J. Law, 61. The conduct and fairness of a sale of chattels by the mortgagee, and the rights acquired by and under such sale, are always open to investigation at the instance of the mortgagor. A sale under judicial sanction is therefore safer and, when the amount is large, advisable.—*Freeman v. Freeman*, 17 N. J. Eq. 44. When the validity of such a sale is in issue, the burden is upon the mortgagee to show that his conduct in selling or in making the purchase was in all things fair and frank, and that he sold or paid for the property what it was reasonably worth.—*Jones v. Franks*, 33 Kan. 497 [6 Pac. 789]; *Black v. Hair*, 2 Hill, Ch. [S. C.] 622 [30 Am. Dec. 289]."

There is a line of cases holding that, where the mortgagee acts unfairly, and sells the property at a price grossly less than its value, and thereby deprives the

mortgagor of the surplus above the debt secured and the costs of the foreclosure, the mortgagor's only remedy, is, in a court of equity, in the nature of a bill to redeem.

This line of cases goes upon the doctrine that after forfeiture the mortgagee has the absolute legal title, and may treat the property as his own, and deal with it as he may choose, without incurring any liability at law. This court, however, has declined to adopt that doctrine as to the law of mortgages, or to follow that line of cases, but has awarded relief in courts of law where there have been such unfair foreclosure or attempted foreclosure as to personal property.

This court expressly held, in the case of *Maxwell v. Moore,* 95 Ala. 166, 10 South. 444, 36 Am. St. Rep. 190, that the mortgagee's title is absolute after forfeiture, but that a tender made thereafter, if before the mortgagee take possession, amounts to payment, and is a destruction of the mortgagee's title, if the tender be kept good. In that case the court said: "It may be conceded that, by the strict rule of the common law, a tender after failure to perform the condition of the mortgage will not, at law, destroy the title, which has become absolute in the mortgagee by the forfeiture. In equity, however, a mortgage being regarded as incident to and security for the debt, the rigor and harshness of the common-law rule has been greatly relieved by holding that the mortgagor has the right to redeem, if not barred by unreasonable delay, by payment, or tendering full payment·at any time before foreclosure. But courts of equity will not enforce the equity of redemption so as to deprive the mortgagee of his security by discharging the lien of the mortgage; its enforcement is dependent upon payment of the debt by the mortgagor, or by a sale of the property. In many of the states courts of law, while not taking cognizance of the equity of re-

demption for the purpose of enforcing the right to redeem, but acting upon and applying equitable principles, have extended to a tender after default the effect of a tender made at the time and in the manner specified in the mortgage, modified so as to prevent the mortgagee's deprivation of his security without satisfaction of the debt. In *Frank v. Pickens, supra,* it was expressly held that a tender of payment of the mortgage debt cannot operate to extinguish the title of the mortgagee, unless the money tendered is kept ready to be paid to the mortgagee whenever he may manifest a willingness to receive it; and, if the benefit of the tender is claimed in court, the money must be placed in the custody of the court, so that, if the tender be adjudged good, it may be awarded to the mortgagee—otherwise the mortgagor is regarded as having abandoned the tender. Recognizing the mortgagor's right of redemption, and observing the principles upon which courts of equity enforce it, the current of the later decisions is that an unconditional tender after default of the full amount due on the mortgage, if kept good, and the money brought into court, discharges the lien of the mortgage."—95 Ala. 169, 170, 10 South. 445 (36 Am. St. Rep. 19).

The case of *Maxwell v. Moore* was a detinue suit between mortgagor and mortgagee for a mule, and depended upon the question and the sufficiency of a tender; yet I see no reason why the same rule should not apply in a case like this. In fact, it was applied in the case of *Johnson v. Selden,* 140 Ala. 418, 37 South. 249, 103 Am. St. Rep. 49, where unfairness in the foreclosure sale was taken advantage of in a court of law by a plea of set-off. The theory upon which cases hold that unfairness in foreclosure sales cannot be taken advantage of in a court of law is that after forfeiture the mortgagee's title is complete and absolute, and he may do

as he pleases with the property. This doctrine is not followed or sanctioned in this state; but relief is granted, in proper cases, by courts of law, to prevent sacrifice and waste of the security, although such courts have no jurisdiction for the purpose of enforcing a right of redemption. The fact that the mortgagor might maintain a bill to redeem does not of itself prevent courts of law from affording any relief on account of an unfair treatment or disposition of the mortgaged property, though it be disposed of after forfeiture, and after the law day of the mortgage.

The next proposition insisted on by appellee to support the action of the trial court is that, the mortgagor, the plaintiff here, being adjudicated a bankrupt before the property was sold by the mortgagee, the plaintiff's title and right to the mortgaged property passed to the assignee in bankruptcy, for the benefit of his creditors, and that, for this reason, he cannot maintain this action. This, generally speaking, is undoubtedly the law; the trustee in bankruptcy is usualy vested with the title to all the bankrupt property, which is not exempt by law from the bankruptcy proceeding. There are, however, exceptions to and limitations upon that general principle, and I think that this case is taken without the operation of that general rule.

If the assignee in bankruptcy abandons any of the property, and, with full knowledge of all the facts, declines to administer it, especially when authorized by the bankrupt court to so abandon it, then the bankrupt's title or right thereto is not destroyed, but revests, and he may assert this right after discharge.

In the case of *Bank v. Lasater*, 196 U. S. 118, 119, 25 Sup. Ct. 206, 208 (49 L. Ed. 408), the Supreme Court of the United States said: "We have held that trustees in bankruptcy are not bound to accept property of an

onerous or unprofitable character, and they have a reasonable time in which to elect whether they will accept or not. If they decline to take the property, the bankrupt can assert title thereto.—*American File Company v. Garrett,* 110 U. S. 288, 295 [4 Sup. Ct. 90, 28 L. Ed. 149]; *Sparhawk v. Yerkes,* 142 U. S. 1 [12 Sup. Ct. 104, 35 L. Ed. 915]; *Sessions v. Romadka,* 145 U. S. 29 [12 Sup. Ct. 799, 36 L. Ed. 609]; *Dushanhe v. Beall,* 161 U. S. 513 [16 Sup. Ct. 637, 40 L. Ed. 79]."

In the cases cited the bankrupt was allowed to hold and receive property which had, without his fault, been abandoned or declined to be administered by the assignees.,

In the case at bar the property was certainly abandoned and surrendered to the defendant on the ground that it had a prior lien upon the property, and without selling it, as it might have done, subject to the mortgage or prior lien.

In the case of *Sessions v. Romadka,* where the question was as to the bankrupt's title to a patent after adjudication, the Supreme Court of the United States said, among other things: "While, under the provisions of the bankrupt law, the title to this patent undoubtedly passed to the assignee in bankruptcy of Poinier, it passed subject to an election on his part not to accept it, if, in his opinion, it was worthless, or would prove to be burdensome and unprofitable. And he was entitled to a reasonable time to elect whether he would accept it or not.—*American File Co. v. Garrett,* 110 U. S. 288, 295 [4 Sup. Ct. 90, 28 L. Ed. 149]; *Sparhawk v. Yerkes,* 142 U. S. 1 [12 Sup. Ct. 104 35 L. Ed. 915]; *Amory v. Lawrence,* 3 Cliff. 523, 535 [Fed. Cas. No. 336]. In this case the asignee had taken a year to wind up the estate, and had given no sign of his wish to assume this property, if indeed he knew of its existence. On being

asked with reference to it by the proposed purchaser, he replied that the estate was all settled up, that he had no power to do anything in the matter, and that Poinier was the only one who could give a title. A plainer election not to accept can hardly be imagined. Granting that up to that time he had known nothing about the patent, it was his duty to inquire into the matter, if he had any thought of accepting it, and not to mislead the plaintiff's agent by referring him to the bankrupt as the proper person to apply to. Under the circumstances, plaintiff could do nothing but purchase of Poinier. Bearing in mind that no claim to this property is now made by the assignee, but that his alleged title to it is set up by a third person, who confessedly has no interest in it himself, it is entirely clear that the defendants ought not to prevail as against a purchaser who bought it of the bankrupt after the assignee had disclaimed any interest in it. Had the existence of this patent been concealed by the bankrupt, or the assignee had discovered it subsequently—after his discharge—and desired to take posession of it for the benefit of the estate, it is possible the bankruptcy court might reopen the case and vacate the discharge for that purpose.— *Clark v. Clark*, 17 How. 315 [15 L. Ed. 77]. But it does not lie in the mouth of an alleged infringer to set up the right of the assignee as against a title from the bankrupt acquired with the consent of such assignee."—145 U. S. 39, 40, 12 Sup. Ct. 801, 36 L. Ed. 609.

I hold that the trial court, therefore, erred in taking this case from the jury, and in declining to allow the plaintiff to prove what the defendant received for the land, and that, while there was no attempt to recover in this action the amount received for the land, the amount received by the defendant for it, so shortly after it sold it, or pretended to sell it, under the mortgage, was a

circumstance for consideration, in determining whether the pretended sale under the mortgage was one made in good faith and fair dealing between the mortgagor and the mortgagee.

SAYRE, J.—(dissenting in part).—I see the logic and force of the prevailing opinion; but I prefer to hold that, in the case of a fraudulent foreclosure of a mortgage on personal property, the mortgagor may maintain an equitable action at law for the difference between his debt and the reasonable value of the property put beyond his reach by the foreclosure.